RICHLEY (MASHETER), DIR. OF HIGHWAYS, APPELLANT, *v.* BOWLING ET AL., APPELLEES.

(No. 2-72-3—Decided September 21, 1972.)

*Mr. William J. Brown,* Attorney General, and *Mr. John B. Huber,* for appellant.
*Mr. Roger J. Henkener,* for appellees.

Cole, J. This is an action in eminent domain whereby the state, by appropriation, has acquired certain lands of the defendants, appellees herein, for highway purposes. The jury awarded compensation in the amount of $5,500 for the land taken and damages to the residue of $8,500. From this verdict and judgment the state appeals.

The defendants owned a parcel of land comprising 4.05 acres with a residence which was located near the then existing state Route 33 about 2 miles west of downtown St. Marys, in Auglaize County, Ohio. The part taken by appropriation consisted of a strip along the highway, a part of which became limited access; a somewhat irregular triangle which was used to create an access road running behind the 4.05 acre parcel; and a certain drainage easement over a part of the land, the fee of which remained in defendants. This area was not located at an interchange as such (there was an interchange to the west some distance with relocated state Route 33). However, immediately east of the defendants' property, an access road with an entry onto state Route 33 was created as a part of the project, and this road ran on an angle to the rear of defendants premises and behind other parcels along the highway, ultimately terminating in a dead-end turnaround. It is the creation of this access road and the fact that a portion of the defendants' land thereby acquired a commercial

value that has led to the basic problem presented by this appeal. The state, in effect, contends that the action of the state has resulted in benefits to the defendants' land which should be considered by the jury in assessing damages to the residue. Testimony was proffered, but not admitted to the effect that an oil company had purchased a segment of the defendants' property composing the "first off the ramp" location which was of such substantial commercial value as to fully offset any damages. It was further contended that the access road constituted a special benefit to the property. The fundamental position of the plaintiff, set forth in his third assignment of error, is that he was prevented from showing the commercial benefit accruing to the property as a "special" benefit to be considered by the jury in the determination of damages. To this problem we turn first.

The argument presented by the plaintiff involves Section 19, Article I of the Ohio Constitution, which establishes the power of eminent domain. In part, that section provides:

" * * * such compensation shall be assessed by a jury, *without deduction for benefits to any property of the owner.*" (Emphasis added.)

This language appears to be quite specific and without any qualification of the word "benefits." However, some lower court cases have held that there are two classes of benefits, general and special, and, though general benefits may not be deducted, "special" benefits may be. There is, as far as we are aware, no Supreme Court case determining this issue, although an early case does define the two categories. *Little Miami R. R. Co.* v. *Collett,* 6 Ohio St. 182, states, at page 186:

"Benefits accruing, from the construction of a railroad, to an owner of lands through which it passes, may properly and conveniently be divided into two classes, to-wit:

"1. General benefits, or such as accrue to community, or the vicinity at large, such as increased facilities for transportation and travel, and the building up of towns,

and consequent enhancement of the value of lands and town lots.

"2. Special benefits, or such as accrue directly and solely to the owner of the lands, from which the right of way is taken; as when the excavation of the railroad track has the effect to drain a morass, and thus to transform what was a worthless swamp into valuable arable land, or to open up and improve a watercourse."

Whether one may read into the Constitution any such distinction is problematical, but that issue arises only if it be determined such "special benefits" are involved in the present situation. An analysis of the foregoing definition places emphasis upon the words "directly and solely" accruing to the owner of the land by virtue of the improvement. On both counts, we believe the present situation fails to qualify as one involving a "special" benefit.

The basic improvement here is the improvement of U. S. 33, making it limited access. If the access rights should be taken from the landowners along the right-of-way, including the defendants, in toto, these lands would be virtually without ingress or egress and the taking would, for all practical purposes, be a taking of the whole property. To prevent this, the state, as an ancillary project, created the access entrance and access road running behind the defendants' property (and abutting on several parcels belonging to others), which thereby eliminated this problem and provided a new mode of ingress and egress. The defendants' property abutting on the access road entrance has only a partially limited access as a result and becomes the first non-limited access area off the main highway. This, however, adds nothing *directly* to the value of the property. It does not in any way improve its drainage, its elevation, its topography or its fertility. These would be "direct" effects on the land itself. Here, the alleged impact on value is not accomplished by either the construction of the road or by the construction of the access road, but by the *anticipated* increase in traffic and the semi-monopolistic condition of exit roads on a limited access highway. Any exit on such a highway, by virtue of the limited number of ex-

its, becomes a potential site for gas stations, motels, restaurants and other businesses dependent upon and catering primarily to the traveler. This is not a direct impact on the land, but an indirect effect of the ultimate use by the traveling public of the limited access highway.

Neither may we say this property is solely affected by this improvement. The improvement is not the access road or simply that portion of the highway adjacent to defendant's land, but the whole highway improvement complex. *Every* exit on the limited access road experiences the same change to a situs of a preferred commercial location as we have described above. The preferred status is not the effect of the new highway. If that were the case every parcel bordering the highway would have commercial possibilities. It is because the highway is made one of limited access, which narrows the commercial possibilities to a limited number of specified exit areas. But this effect exists along the entire limited access highway and equally affects every such area and each so-called "first off the ramp" location. This is a general effect of making such a highway limited access, and not a specific effect solely benefiting this one limited area along the entire improvement. The evidence clearly indicates that other ramp areas were so affected.

But it is also necessary to consider the impact of this commercial potential not only on the "first off the ramp" location but on the 2nd, 3rd and 4th locations. It is a matter of common observation that in addition to gas stations other businesses locate at such sites. Restaurants, motels, franchise food and dairy operation, as well as other gas stations, commonly congregate at such locations. To contend that the commercial potential is limited solely to the one lot closest to the highway is to deny the plain evidence of every day experience and observation. We must conclude that this commercial potential is not a direct result of the improvement proper, but an indirect result of the ultimate use by the traveling public of that improvement. We must conclude that this commercial potential is not operative solely on this property, but operates in a similar fashion, differing perhaps in degree but not in kind, on

many other properties located along the limited access highway, and it is not because of the improved roadway, but because of the limited access character that a commercial potential is created in specially located lots. It is only because the road is one of limited access over a substantial distance that the exit properties are affected, and this effect is common at each exit. The property here concerned with may not be conceived as the sole beneficiary of this limitation on access.

Hence, we conclude that there is no "special" benefit directly and solely to this property and none which would be a possible exception to the basic constitutional rule "without deduction for benefits." The constitutional problem therefore does not arise.

But the plaintiff appears to contend that the access road was also in and of itself a special benefit to this property. Clearly, the access road was created to prevent a 100 per cent taking of property by leaving to it no ingress or egress. It benefited not only the defendants' land, but all lands bordering upon it on both sides and, hence, constitutes a benefit which does not fall within the category of special benefits. It did not intend to solely benefit the defendants but, rather, sought to eliminate the drastic impact of the taking upon several landowners who would otherwise have no mode of ingress or egress. As such, it was fully considered by the expert witnesses in their determination of the value after the taking. It became one factor involved in the determination of that value and to that extent served to mitigate the loss to the defendants. It was not, however, a special benefit with some value to be deducted from the damages then ascertained. Should this have been the case, it would be, in effect, twice deducted to the detriment of the landowners.

We conclude that the court below acted properly and that the third assignment of error is not well taken.

There are other errors assigned with which we shall deal more briefly.

1. The plaintiff objects that the court below restricted him on the voir dire examination of the jury by preventing

counsel from asking jurors if they could obey the court's instructions as to commercial values at intersections and not permit a predisposition as to values to affect their judgment as to the value of the land taken. However, it is doubtful if this assignment is adequately portrayed by the record. The basic purpose of a voir dire is to assure a fair and impartial jury. This question deals not with interest or bias as such but with the question as to whether jurors would obey the instructions of the court. In view of the serious impact and confusion such questions might have on the issue of damages to the residue, and since the basic willingness of the jurors to follow the court's instructions might be more directly ascertained, we do not believe the court below abused its discretion. The scope of the voir dire is essentially a matter of the sound discretion of the trial court and his actions may be reversed only if that discretion is abused. *Pavilonis* v. *Valentine*, 120 Ohio St. 154; *Knapp* v. *Poor*, 24 Ohio St. 2d 123. The assigned error is not well taken.

2. The plaintiff objects in his second assignment of error that the trial court prevented him from introducing evidence to show the mitigation of damages by the construction of an access road. However, the existence of this access road was a predicate to the determination of value after the taking. It was one factor considered by the appraiser. It was fully described by the highway engineer. Considering the record as a whole, the fact of the existence, after the taking, of a new access road and its impact on the values was fully before the jury. The argument and ruling of the court were concerned primarily with the issue of "special benefits" which was not the proper approach to the issue of the access road. This road was simply one factor existing after the improvement, and a part of the then existing situation. It was to be used in defining the damages to the residue. It would appear that the trial court, throughout, permitted testimony as to the existence and impact of the access road and that the plaintiff was not prejudiced.

3. The fourth assignment of error concerns an instruc-

tion of the court as follows: "You may also consider any increase in flow rate of water on said lands should you find there is increased flow rate." This was in connection with other parts of the charge dealing with damages to the residue after the taking. It is objected to that the state has no liability for a failure to provide a system of drainage to carry off any increase in flow of surface water due to the improvement. However, as pointed out by this court in *In re Appropriation for Highway Purposes*, 6 Ohio App. 2d 6, the problem of damages to the residue is one of a deceased market value. Although there may be no right to claim damages for such injury in the absence of an appropriation, nevertheless, where there is a taking, such an element may properly and legitimately bear upon the determination of the fair market value after the taking. In the case of *Columbus* v. *Farm Bureau Cooperative Assn.*, 27 Ohio App. 2d 197, the above mentioned case is cited as authority for the conclusion therein reached, at paragraph one of the syllabus that "* * * consequential damages * * * which would ordinarily be [in the absence of a taking] *damnum absque injuria*, may be compensable damages to the residue where there is a taking of a portion of an owner's property." Every element that can fairly enter into the question of value may be considered and here the element of an increase in the rate of flow of surface waters after the improvement is one such element entering into a consideration of market value after the taking. There was testimony that the velocity of flow of surface water would be increased and, hence, defendant had a right to the consideration of this element insofar as it might have an impact on market value.

4. The plaintiff assigns the failure of the trial court to give certain specified requested charges as error. In the Civil Rules there is no mandatory requirement that requested charges be given. Paragraph 2 of the syllabus of *Smith* v. *Flesher*, 12 Ohio St. 2d 107, states the law prevailing prior to the adoption of the Civil Rules, as follows:

"Error in refusing to give a special request to charge before argument must be prejudicial in order to support

reversal of a judgment rendered against a party complaining of such error.''

In the present case, the substance of each requested charge that the court refused to give (which failure is cited as error) was incorporated in and given by the court as part of its general charge to the jury. Under Civil Rule 51 all instructions are now given after argument is completed. There is no right to have such instructions given separately from the general charges. McCormac, Ohio Civil Rules Practice, Section 12.16, page 303. It follows that the giving of the substance of the requested charge by the court at this time would eliminate any prejudice from the failure to give the exact wording of the requested charge.

Because the requested charge in each case was adequately incorporated in the general charge, no prejudice from the failure to give the exact wording of the requests occurred and the assignment of error is not well taken. There is also a serious question as to whether proper objection was made either to the alleged failure of the court to incorporate special instructions in its general charge or to the charge as to the rate of flow *prior* to the time the jury retired as required by Civil Rule 51.

*Judgment affirmed.*

GUERNSEY, J., concurs.
YOUNGER, P. J., dissents.

YOUNGER, P. J., dissenting. I must dissent from the majority opinion in this case. The state was prepared to show that because the interchange was being built in close proximity to the property being appropriated, and because it was the first property off the ramp, it became a special benefit accruing to Dr. Bowling individually. As such, it acquired a commercial value and, in fact, a small piece of this land (less than one acre) was sold for filling station purposes to the Marathon Oil Company for $40,000. This windfall to Dr. Bowling occurred solely by accident or because the plans called for this interchange at this particu-

lar place. This did not happen to the other landowners who were neighbors of Dr. Bowling. This proffered testimony was ruled nonadmissible by the trial court.

"Special benefits" as used in contra-distinction to "general benefits" are described and set forth in the case of *Little Miami R. R. Co.* v. *Collett,* 6 Ohio St. 182, which was an appropriation case also.

I think the trial court committed prejudicial error in its refusal to admit this evidence.