City of **HILLIARD**, Appellant,

v.

**FIRST INDUSTRIAL, L.P. et al.**, Appellees.

[Cite as *Hilliard v. First Indus., L.P.*, 165 Ohio App.3d 335, 2005-Ohio-6469.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–131.

Decided Dec. 6, 2005.

336

338

**340**

Isaac, Brant, Ledman & Teetor and Maribeth Deavers, for appellant.

Goldman & Braunstein, L.L.P., William Goldman, and Michael Braunstein, for appellee First Industrial, L.P.

BRYANT, J.

{¶ 1} Plaintiff-appellant, city of Hilliard, appeals from a judgment of the Franklin County Court of Common Pleas ordering plaintiff to pay defendant-appellee, First Industrial, L.P., $510,000 in compensation for damages caused to the residue of First Industrial's real property as the result of plaintiff's appropriation of First Industrial's property. Because the trial court committed no reversible error, we affirm.

{¶ 2} On January 14, 2002, plaintiff passed an ordinance appropriating 6.92 acres of First Industrial's 62.675–acre property and directed that a petition be filed to assess the compensation owed for the taking. The parties could agree neither on the compensation to be paid for the appropriated real property nor on the value of damages to the residue. As a result, plaintiff filed a petition in the Franklin County Court of Common Pleas to appropriate 6.92 acres of First Industrial's property, to establish just compensation for the appropriated real property, and to determine the value of damages to First Industrial's residue. A jury trial ensued on the sole issue of just compensation for the appropriated property and damages to the 55.552–acre residue. The jury awarded $520,000 as compensation for the appropriated property and $300,000 for damages to the

residue. On July 24, 2003, the trial court entered judgment on the jury verdict. Plaintiff appealed.

{¶ 3} In the first appeal, we affirmed the jury's verdict relating to the compensation for the taking but reversed the jury's determination of damages to the residue. *Hilliard v. First Industrial, L.P.*, 158 Ohio App.3d 792, 2004-Ohio-5836, 822 N.E.2d 441, at ¶ 15 (*"First Industrial I "*). We held that the evidence did not support the jury's determination of damages to the residue because the jury relied exclusively on evidence of cost to cure without comparing it to the actual diminution in value, calculated by finding the difference between the pre- and postappropriation fair market values of the residue. Id. at ¶ 14. Since the jury verdict reflected some resulting diminution in value but used an improper method to calculate damages, we remanded the matter for a damages-only hearing regarding the residue. Id.

{¶ 4} On remand, the trial court heard evidence from First Industrial and plaintiff on the preappropriation value of the residue, the postappropriation value of the residue, and the cost required to restore First Industrial's residue to its preappropriation value. The trial court entered judgment for First Industrial, finding that (1) the general benefits created by the construction of a road open to the public, even though some of those general benefits may accrue to First Industrial, may not be used to reduce damage to the residue of First Industrial's property caused by the appropriation for that roadway, (2) the preappropriation value of the residue of First Industrial's property is $10,515,000, (3) the postappropriation value of the residue is $10,005,000, (4) the damage to the residue of the First Industrial site caused by the appropriation is $510,000, (5) the cost of cure to reasonably restore the First Industrial site to its preappropriation value and functionality is $300,000 for construction, plus the value of 2.5 acres of land at $95,000 per acre for a total of $537,500, and (6) because the cost of cure is greater than the difference between the preappropriation and postappropriation values of the residue, First Industrial is entitled to damages to the residue in the amount of $510,000.

{¶ 5} Plaintiff appeals, assigning the following errors:

I.     The trial court's decision was contrary to law.

II.    The trial court's decision was against the manifest weight of the evidence.

III.   The trial court erred in not allowing the city to call Glenn Halbacher and Don Kitzmiller as witnesses at the trial.

IV.    The trial court erred in its determination of interest.

{¶ 6} In the first assignment of error, plaintiff contends that the trial court's decision was contrary to law because (1) the trial court failed to offset the damages to the residue by the special benefits First Industrial enjoyed as a result

of the improvements plaintiff made, (2) the trial court based the cost-to-cure damages on a standard of best cost to cure instead of reasonable cost to cure, (3) the trial court imposed an improper restriction on testimony regarding best use of the residue, and (4) the trial court's decision was based on a fair market value of the residue that improperly considered loss of ingress and egress to the property.

{¶ 7} Initially, plaintiff contends that the trial court erred as a matter of law by failing to offset the damages to the residue by the special benefits bestowed to First Industrial as a result of the appropriation. Plaintiff alleges that increased frontage, safer and more commercially efficient access to the abutting highway, and additional potential uses for the land remaining after the appropriation accrue solely to First Industrial's residue and thus limit the damages to less than $55,464.

{¶ 8} In an appropriation case, a landowner is entitled to compensation for the property actually taken, as well as damages for injury to the property that remains after the taking, i.e., the residue. R.C. 163.14; *Norwood v. Forest Converting Co.* (1984), 16 Ohio App.3d 411, 415, 16 OBR 481, 476 N.E.2d 695. Compensation and damages are two separate and distinct remedies. Compensation means the sum of money that will compensate the owner for the land actually taken, which is reflected in the fair market value of the land taken without deduction for benefits that may accrue to the remaining lands of the owner. Id.; see Section 19, Article I, Ohio Constitution (stating that "where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner"). By contrast, damages "means an allowance made for any injury that may result to the remaining lands by reason of the construction of the proposed improvement, after making all permissible allowances for special benefits, and the like, resulting thereto." *Norwood,* 16 Ohio App.3d at 415, 16 OBR 481, 476 N.E.2d 695; see *In re Appropriation of Easement for Hwy. Purposes* (1952), 93 Ohio App. 179, 183, 50 O.O. 410, 112 N.E.2d 411.

{¶ 9} Pursuant to R.C. 163.14, the jury assesses the damages to the residue, if any, without deductions for general benefits to the owner's property. General benefits are those that accrue to the community or the vicinity at large as a result of the appropriation. *Richley v. Bowling* (1972), 34 Ohio App.2d 200, 202, 63 O.O.2d 368, 299 N.E.2d 288; see *Norwood,* 16 Ohio App.3d at 416, 16 OBR 481, 476 N.E.2d 695. Through the negative implication of R.C. 163.14 and growing case law, the law suggests that the fact-finder may consider elements that have a positive impact on the residue's postappropriation value if they are

considered "special benefits." *Bowling,* 34 Ohio App.2d at 202, 63 O.O.2d 368, 299 N.E.2d 288; *Norwood,* 16 Ohio App.3d at 415, 16 OBR 481, 476 N.E.2d 695. Special benefits are those that accrue directly and solely to the landowner's property. *Little Miami RR. Co v. Collett* (1856), 6 Ohio St. 182, 186.

{¶ 10} In order to aid the jury's assessment, expert witnesses may state their opinions regarding the damages to the residue. *Wray v. Stvartak* (1997), 121 Ohio App.3d 462, 700 N.E.2d 347. Such opinions must be expressed in terms of the difference between the pre- and postappropriation fair market values of the residue. *First Industrial I,* 158 Ohio App.3d 792, 2004-Ohio-5836, 822 N.E.2d 441 at ¶ 5, citing *Ry. Co. v. Gardner* (1887), 45 Ohio St. 309, 322, 13 N.E. 69; *Wray,* 121 Ohio App.3d at 476, 700 N.E.2d 347; *Masheter v. Kebe* (1973), 34 Ohio App.2d 32, 36, 63 O.O.2d 58, 295 N.E.2d 429; *Am. Louisiana Pipe Line Co. v. Kennerk* (1957), 103 Ohio App. 133, 139, 3 O.O.2d 201, 144 N.E.2d 660. In determining both pre- and postappropriation values, every element should be considered that can fairly enter into the question of value and that an ordinarily prudent businessperson would consider before forming judgment in making the purchase. *Hurst v. Starr* (1992), 79 Ohio App.3d 757, 763, 607 N.E.2d 1155, quoting *In re Appropriation for Hwy. Purposes of Land of Winkelman* (1968), 13 Ohio App.2d 125, 138, 42 O.O.2d 232, 234 N.E.2d 514.

{¶ 11} Here, at the damages-only hearing, both First Industrial and plaintiff introduced expert testimony regarding the pre- and postappropriation fair market values of the residue. First Industrial's expert witness, Robert Weiler, testified that the residue's preappropriation value was $10,515,000 and the postappropriation value was $10,005,000. Weiler attributed this ten-percent diminution in value solely to the lack of internal access from the new ingress/egress point to First Industrial's building and existing roadways. On cross-examination, Weiler stated that he had considered the postappropriation increase in road frontage, but it did not affect the value of the residue, as reflected in its omission from his written opinion. Weiler also testified on cross-examination that the land freed by the appropriation was less desirable for commercial development than it was before the appropriation.

{¶ 12} Plaintiff's expert witness, Henry Halas, testified that the residue's value increased by $4 million as a result of the improvements accruing from the appropriation. Halas testified that the new ingress/egress points improved access immeasurably and solely benefited First Industrial's property. Halas also testified that the new access points opened up seven or eight acres of First Industrial's previously encumbered property, to new, more valuable commercial usages, thereby increasing the residue's value. Because the improvements enhanced the value of the residue beyond the amount of damages caused to the residue, Halas concluded that the residue sustained no damages.

{¶ 13} After hearing the testimony of the two witnesses, among others, the trial court awarded First Industrial $510,000 for damages to its residue. The court allowed Halas to testify about special benefits but, in its role as the trier of fact, found Halas's testimony unpersuasive for various stated reasons. Instead, the court was heavily influenced by Weiler's valuation, which disregarded the alleged special benefits. Neither R.C. 163.14 nor case law *requires* the fact-finder to include the accrual of special benefits when assessing the damage to the residue; rather, the law dictates that the fact-finder *may* consider special benefits when making its determination. See *Norwood; Bowling,* supra. Since the court allowed plaintiff to introduce testimony on special benefits and the court, as the trier of fact, considered but did not include special benefits in its assessment, the court did not err as a matter of law, especially in view of the trial court's not finding Halas's testimony persuasive.

{¶ 14} Plaintiff next contends that the trial court erred as a matter of law by determining the best cost to cure rather than a reasonable cost to cure. The amount of cost-to-cure damages to the residue is significant because it may limit the amount of damages assessed if the cost to restore the residue to its preappropriation fair market value is less than the difference between the pre- and postappropriation fair market values. *Wray,* 121 Ohio App.3d at 478, 700 N.E.2d 347. The cost to cure, however, cannot be utilized to increase the damages to the residue, but only to reduce them. Id.

{¶ 15} Here, each party presented differing estimates of how much it would cost to cure the damages to First Industrial's residue caused by the loss of internal access from the ingress/egress access point to the building and internal roadways. First Industrial's expert witnesses, Weiler and Kevin Smith, testified that the cost to restore the residue to its preappropriation value was $537,500. Weiler testified that the cost to cure includes not only the cost of constructing a roadway from the ingress/egress point to the building and internal roadways but also the value of losing land to the newly constructed internal roadway that could otherwise be used for development. Weiler testified that First Industrial's property is worth $95,000 an acre.

{¶ 16} Smith testified that construction of a roadway from the new ingress/egress access point to the building and internal roadways would cost $300,000. The proposed roadway would connect to existing internal roadways in a manner similar to its pre-appropriation configuration, thereby occupying 2.5 acres of otherwise developable land. Weiler testified that Smith's proposal was a reasonable cure and would restore the residue to its preappropriation value. With Smith's numbers applied to Weiler's formula and acreage valuation, the cost to restore the residue to its preappropriation value totaled $537,500.

{¶ 17} Plaintiff's expert witnesses, engineers Donald Kitzmiller and Letty Schamp, testified that the cost to restore First Industrial's residue to its preappropriation fair market value was $55,464. Plaintiff's figure is drastically lower because, in part, it proposes constructing two short stub roads from the new ingress/egress access points to First Industrial's existing internal roadways instead of constructing a lengthier roadway connected to the original path. Plaintiff contends that these stub roads fully restore the usefulness of the residue at a reduced cost. On cross-examination, Weiler testified that plaintiff's alternative proposal was "feasible," but it would not restore the residue to its preappropriation value.

{¶ 18} The trial court adopted First Industrial's proposal that restoration of the residue to its preappropriation value would cost $537,500. The court relied on Weiler's formula for the cost to construct, plus lost land, to arrive at its conclusion, apparently finding plaintiff's experts unpersuasive. Plaintiff contends that the trial court erred as a matter of law because the court-adopted cost to cure puts First Industrial in a better position than it was preappropriation.

{¶ 19} In support of its argument, plaintiff contends that the cost-to-cure figure should operate to mitigate damages, not finance improvements to the residue. While we agree that the cost-to-cure approach limits damages when the cost is less than the amount of actual damages to the residue, the amount of the cost to cure is not limited in itself. The cost-to-cure figure represents an opinion of how much it will cost to restore the residue to its preappropriation value. Plaintiff and First Industrial both presented expert opinions as to this cost. The court found First Industrial's witnesses to be more credible and First Industrial's proposal to be a more reasonable method of restoring the residue to its preappropriation value and functionality. Although First Industrial's proposal is considerably more expensive than plaintiff's, the trier of fact weighs the credibility of the witnesses and makes the determination. Because the evidence supports the trial court's conclusion that First Industrial's proposal was reasonable, the court did not err as a matter of law.

{¶ 20} Plaintiff's third argument under its first assignment of error contends that the trial court erred as a matter of law by restricting experts from considering better zoning uses in determining the postappropriation value of the residue. "The rule of valuation in a land appropriation proceeding is not what the property is worth for any particular use but what it is worth generally for any and all uses for which it might be suitable, including the most valuable uses to which it can reasonably and practically be adapted." *Sowers v. Schaeffer* (1951), 155 Ohio St. 454, 44 O.O. 419, 99 N.E.2d 313, paragraph three of the syllabus. Accordingly, " 'an expert need not confine his valuation testimony to the use permitted under existing zoning regulations.' " *Wray*, 121 Ohio App.3d at 477,

700 N.E.2d 347, quoting *Wray v. Mussig* (Sept. 20, 1996), Lake App. No. 95–L–172, 1996 WL 586755. Rather, "the expert may testify as to a highest and best use that is not permitted under existing zoning regulations even without evidence of a probable change in zoning within the foreseeable future." Id.

{¶ 21} Here, plaintiff's expert witness, Henry Halas, testified that First Industrial's residue was worth about $7 million before the appropriation based on its industrial zoning restriction, good location, and poor access. According to Halas, First Industrial's residue is worth about $11.5 million after the appropriation because of improved access to the site and potential commercial uses that were previously unavailable. Despite repeated objections by First Industrial's counsel, the court allowed Halas to testify that First Industrial could best use 15 acres of its postappropriation residue for commercial development, which would increase the residue's value by $4 million. Plaintiff contends that Halas's testimony was competent, credible, and admissible, and thus the court should not have excluded it from consideration.

{¶ 22} Nothing in the record suggests that the trial court failed to consider Halas's testimony. Rather, plaintiff once again is asking this court to substitute its judgment for that of the trial court regarding the witnesses' credibility. The trial court, acting as the trier of fact, found Weiler to be a more credible witness on valuing the property. Weiler testified that he considered this new "commercially useful" land in his appraisal, but it did not affect the damages to the residue because the land was less commercially desirable.

{¶ 23} Although an expert may testify to the best use of land irrespective of the current zoning restrictions, the expert may not increase the fair market value over and above that which an informed willing purchaser would presently pay. *Masheter v. Kebe* (1976), 49 Ohio St.2d 148, 153, 3 O.O.3d 86, 359 N.E.2d 74. Weiler's appraisal considered what a willing purchaser would pay for First Industrial's postappropriation property, considered alternative uses, but focused exclusively on loss of internal access from the ingress/egress point to the building and internal roadways. Weiler was not required to appraise the land upon the basis of an alternative commercial use, since he believed that it was not feasible for the area in question. The trial court's choice not to include Halas's highest-and-best-use valuation is an issue of credibility, not a matter of law. The court did not err when it found Weiler more credible than Halas.

{¶ 24} Although the court allowed plaintiff to appraise First Industrial's residue with some commercial usage, the court ended plaintiff's cross-examination of Smith when the questioning broached First Industrial's application to have the property rezoned. Plaintiff asserts that the trial court's action is contrary to the law of valuing postappropriation residue, because Smith valued First Industrial's

residue based upon a light industrial zoning restriction and did not consider potential commercial development in his postappropriation appraisal.

{¶ 25} Any error in the trial court's restricting of plaintiff's cross-examination of Smith was harmless. The court's assessment of damages to the residue was based almost exclusively on the testimony of Weiler, who discounted the value of a commercial zoning change. Thus, the status of the rezoning application would not and did not affect Weiler's opinion of the land's value. Additionally, the trial court's reply at the time of the ruling on cross-examination indicated that it already knew that the application was pending, and thus its ruling denying plaintiff's attempt to elicit that fact had no effect on the court's decision.

{¶ 26} Lastly, plaintiff contends that the trial court erred as a matter of law by including the loss of ingress and egress into the postappropriation fair market value, as the change of highway access is not properly considered in determining the damages to the residue. Plaintiff correctly asserts that circuity of travel to and from real property is not compensable, *First Industrial I*, 158 Ohio App.3d 792, 2004-Ohio-5836, 822 N.E.2d 441 at ¶ 8, citing *State ex rel. Merritt v. Linzell* (1955), 163 Ohio St. 97, 56 O.O. 166, 126 N.E.2d 53, but circuity of travel created within the owner's property is compensable. *First Industrial I* at ¶ 8, citing *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 667 N.E.2d 8. Circuity of travel within one's own property occurs when one entrance or exit is removed and another is not recreated. As we stated in the previous appeal, "[plaintiff] has created circuity of travel within First Industrial's site. It has taken away a point of ingress and egress to and from First Industrial's internal loading dock and failed to create another point of ingress and egress to and from the loading dock." *First Industrial I*, at ¶ 8.

{¶ 27} Plaintiff nonetheless contends that because Weiler included in his valuation of the residue an amount to compensate for a change in the location of the ingress/egress access point, the trial court, by adopting Weiler's opinion, improperly included a noncompensable item in its damage assessment. Weiler testified that because "the same access off of the highway is no longer physically available, traffic must navigate a different route to the residue, and * * * such route is complicated by the addition of a median." Even so, Weiler's appraisal of the damages to the residue was based solely on the diminution in value to the building caused by a lack of access from the egress/ingress points to the building. As a result, the trial court did not include the change in location of the ingress/egress access point in its assessment and therefore did not err.

{¶ 28} Plaintiff's first assignment of error is overruled.

{¶ 29} In its second assignment of error, plaintiff contends that the trial court's decision was against the manifest weight of the evidence for three reasons: (1) the trial court improperly ignored relevant testimony from plaintiff's expert witness that the residue increased in value due to its potential for a better use, (2) the trial court did not determine the fair market value of the building prior to the taking, and (3) First Industrial's proposed estimate of $300,000 was not supported by a proper foundation and was improperly based on hearsay.

{¶ 30} "Judgments supported by some competent, credible evidence going to all essential elements of the case" are not against the manifest weight of the evidence. *Young v. Univ. of Akron,* Franklin App. No. 04AP–318, 2004-Ohio-6720, 2004 WL 2892575, at ¶ 25, citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, paragraph one of the syllabus. A judgment is not against the manifest weight of the evidence merely because inconsistent evidence was presented. *State v. Raver,* Franklin App. No. 02AP–604, 2003-Ohio-958, 2003 WL 723225, at ¶ 21. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Estate of Barbieri v. Evans* (1998), 127 Ohio App.3d 207, 211, 711 N.E.2d 1101.

{¶ 31} Initially, plaintiff contends that the trial court's decision is against the manifest weight of the evidence because the court ignored Halas's testimony regarding the residue's potential for a better use. Plaintiff asserts that Halas was credible and competent, and even if Halas was unpersuasive, Weiler was equally unpersuasive due to the inconsistencies in his trial testimony as compared to his testimony in the damages-only hearing.

{¶ 32} The trial court wholly adopted Weiler's testimony into its decision and disregarded Halas's testimony. Although Weiler's testimony regarding the damages to the residue's building varied from the first trial to the damages-only hearing, any inconsistency, along with any inconsistency in Halas's testimony, presented a matter for the trier of fact's resolution. The trier of fact determines the credibility and weight of the testimony. Although plaintiff claims that Weiler provided inconsistent appraisals, Weiler explained that his second appraisal considered the damage to the building and its lack of internal access, while his first appraisal was limited to damage to the real property. His explanation was adequate and justifiable, thereby permitting the trial court to find his testimony persuasive. Since Weiler's testimony was sufficient, competent, credible evidence of damages to the residue, plaintiff's first issue is not well taken.

{¶ 33} Plaintiff next contends that the trial court's decision is against the manifest weight of the evidence because First Industrial's building was not

appraised prior to the taking. Plaintiff asserts that the building's $5.1 million value was not established by one of the three recognized appraisal methods, and thus the court's determination of damages was contrary to law.

{¶ 34} Three expert witnesses testified as to the fair market value of the First Industrial's building. Plaintiff's expert, Halas, testified that the preappropriation valuation of the building was $5.1 million. Halas calculated the value of the building by multiplying the building's 262,000 square feet by $20 a square foot. Weiler testified that he valued First Industrial's building from Halas's appraisal and independently stated that the appraisal was "in the range of value." Smith also appraised the building in a manner similar to Halas: he multiplied the building's square footage by $15 a square foot for a value of $3.93 million. Although Smith appraised the building at a lesser value, he valued the building's postappropriation diminution in value comparably to Weiler's testimony.

{¶ 35} All three witnesses provided their independent professional opinions of the building's value. Plaintiff cannot provide an assessment, testify to the value, and then, after the fact, complain that no appraisal was performed. The trial court did not err in accepting the value to which even plaintiff's witness testified.

{¶ 36} Plaintiff's third argument under its second assignment of error contends that Smith's estimate of $300,000 to restore the functionality of First Industrial's internal roadways was not supported by a proper foundation and was improperly based on hearsay; without Smith's testimony, plaintiff asserts that the trial court's decision is against the manifest weight of the evidence. Plaintiff argues that Smith was not qualified to testify as an expert under Evid.R. 702(A) because he is not an engineer and does not have the special knowledge needed to express an opinion on the cost to construct an internal roadway. Plaintiff further asserts that Smith's testimony was invalid because he did not personally make the calculations but relied on the calculations of a team of engineers working under his supervision.

{¶ 37} Plaintiff never objected to Smith's qualifications as an expert regarding his cost-to-cure opinion and never objected to the alleged hearsay during trial. Typically, we need not consider any claim regarding a particular error if that claim was not preserved by objection, ruling, or otherwise in the trial court. *Motorists Mut. Ins. Co. v. Hall,* Franklin App. No. 04AP–1256, 2005-Ohio-3811, 2005 WL 1785126. Here, since plaintiff failed to preserve this issue with an objection, we examine it only to determine whether the trial court committed plain error.

{¶ 38} In civil cases, the "plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the

basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus. Here, plaintiff cannot demonstrate plain error. Smith's testimony is not patently erroneous. Even assuming that his testimony was not proper, his testimony did not affect the fairness or integrity of the judicial process.

{¶ 39} Because the trial court's judgment is not against the manifest weight of the evidence, plaintiff's second assignment is overruled.

{¶ 40} In its third assignment of error, plaintiff contends that the trial court erred by not allowing Glenn Halmbacher and Don Kitzmiller to testify as witnesses at the hearing, even though their depositions had been taken on videotape for trial. Plaintiff claims that its not being allowed to re-cross-examine Halmbacher substantially prejudiced its case.

{¶ 41} Evidentiary rulings lie within the broad discretion of the trial court. *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291. Evid.R. 103(A)(2) addresses an erroneous ruling on the exclusion of evidence and states: "Error may not be predicated upon a ruling which * * * excludes evidence unless a substantial right of the party is affected, and * * * the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. Offer of proof is not necessary if evidence is excluded during cross-examination." If the party claiming error is unable to establish that the trial court's ruling affects a substantial right, the error is deemed harmless; if the party is unable to proffer the substance of the excluded evidence, the error is deemed waived. *Campbell v. Johnson* (1993), 87 Ohio App.3d 543, 551, 622 N.E.2d 717.

{¶ 42} Here, plaintiff objected to the exclusion of the live testimony of Kitzmiller and Halmbacher but failed to proffer the substance of what their testimony would tend to prove. Plaintiff explained to the trial court that it wanted to ask Halmbacher three or four follow-up questions about "some things he testified to on [his video deposition]" and wanted Kitzmiller "to have an opportunity to get up and respond to some of [Halmbacher's] testimony." Because plaintiff failed to disclose the substance of the excluded evidence, under Evid.R. 103(A)(2), its third assignment of error cannot be predicated on the trial court's exclusionary ruling.

{¶ 43} Under Evid.R. 103(A)(2), proffer nonetheless may not be necessary if the exclusion is related to cross-examination. Some courts still follow the statutory practice found in R.C. 2317.07 of calling witnesses "as if under cross-examination," but Evid.R. 607 allows a party to call even the opposing party as a witness, and to impeach that witness, on direct examination. *In re M.R.D.,*

Franklin App. No. 05AP–324, 2005-Ohio-5705, 2005 WL 2789070, at ¶ 14. Although plaintiff's remarks in the trial court indicate that plaintiff sought to "cross-examine" Halmbacher, under Evid.R. 607, plaintiff would call Halmbacher on direct rather than cross-examination. Because the evidence was not excluded during cross-examination, and because plaintiff's reason for wanting to call Halmbacher and Kitzmiller as witnesses at the hearing does not reveal what plaintiff hoped to elicit from either witness, plaintiff's failure to proffer the excluded evidence renders any error waived. *Campbell*, 87 Ohio App.3d 543, 551, 622 N.E.2d 717. To find prejudicial error on this record would require speculation that is inappropriate to appellate review.

{¶ 44} Plaintiff's third assignment of error is overruled.

■ {¶ 45} In its fourth assignment of error, plaintiff contends that the trial court erred in awarding First Industrial ten-percent interest when the applicable interest rate is four percent.

{¶ 46} R.C. 163.17 directs the appropriating agency to pay interest on the appropriated land from the date of taking to the date of actual payment of the award. According to the statute, the interest shall be paid at the rate of interest set forth in R.C. 1343.03. Prior to June 2, 2004, R.C. 1343.03 awarded an interest rate of ten percent per annum. Effective June 2, 2004, R.C. 1343.03 through 5703.47 awards an interest rate equal to the federal short-term rate plus three percent, which the parties stipulate to be four percent per annum.

{¶ 47} First Industrial is entitled to receive interest from February 26, 2002, the date of the taking, until plaintiff pays the damages award. Since this interest award spans a period in which the statutory rate has changed, the first rate will apply until the statutory change; then, the second rate will apply. *Tony Zumbo & Son Constr. Co. v. Ohio Dept. of Transp.* (1984), 22 Ohio App.3d 141, 148–149, 22 OBR 381, 490 N.E.2d 621; *Cleveland Hts. Fire Fighters Assn. v. Cleveland Hts.* (July 12, 1984), Cuyahoga App. No. 47727, 1984 WL 13999. "To do otherwise would make R.C. 1343.03(A) retroactive. Since R.C. 1343.03(A) was not expressly made retroactive, it would operate prospectively only. See R.C. 1.48." *Sheets v. Sheets* (Dec. 30, 1994), Gallia App. No. 94CA17, 1994 WL 728050. First Industrial, therefore, is entitled to an interest rate of ten percent from February 26, 2002, until June 2, 2004, and four percent from June 2, 2004, until the day plaintiff pays the damages award. Plaintiff's fourth assignment of error is sustained in part and overruled in part.

{¶ 48} Having overruled plaintiff's first, second, and third assignments of error, and having sustained in part and overruled in part plaintiff's fourth assignment of error, we affirm the judgment of the trial court in all respects except the award of interest, and we modify the interest award to reflect interest at the rate of ten

percent from February 26, 2002, until June 2, 2004, and four percent from June 2, 2004 until plaintiff pays the damages award.

Judgment affirmed
as modified.

Brown, P.J., and McGrath, J., concur.