DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant/cross-appellee, city of Toledo, appeals from a judgment entered on a jury verdict in this case involving a partial appropriation of real property. The owners of the appropriated real property, appellees/cross-appellants, Weston L. Gardner, Jr. and Maureen R. Gardner, have filed a cross appeal challenging the trial court's *Page 2 
calculation of interest on the amount they were awarded and the trial court's failure to consider an additional award of costs. For the reasons that follow, we affirm the jury verdict, but reverse and remand the case for additional proceedings on the issues of costs and interest.
 {¶ 2} On August 15, 2005, the city filed an appropriation proceeding against the Gardners, as owners of the subject real property. The property, located at 3800 Airport Highway, is leased by the Gardners to a business known as Gardner Signs, Inc. Gardner Signs, Inc. — which is owned, in part, by appellees — repairs, fabricates, and installs large commercial outdoor signs.
 {¶ 3} According to the city's complaint, the acquisition of the property was necessary for a highway-widening project. The acquisition took approximately . 110 acres of frontage along Airport Highway, and affected sub-service sewer easements running north of Airport Highway. In addition, the project involved relocation of certain overhead power lines, both along Airport Highway and in the rear of the property along Angola Road.
 {¶ 4} In connection with the appropriation proceeding, and as required by statute, the city deposited the amount it believed equaled the value of the appropriation — in this case, $26,830, which represented the value of the land itself. The city did not believe that there was any damage to the residue and, as a result, offered no money for such. The Gardners, on the other hand, believed that there was tremendous damage to the residue. Because of this disagreement, the case proceeded to trial on the issue of damages. *Page 3 
 {¶ 5} Prior to trial, the trial court ordered a jury view, and, in connection with that jury view, ordered the city to set stakes on the property to mark: (1) the location of the new property line; (2) the temporary construction easement; and (3) the sewer easement. In the order, the trial court specifically required that the city stake the property at least 24 hours prior to the commencement of trial.
 {¶ 6} The city did not perform any of the staking prior to the 24 hour deadline, and instead waited until the last minute to place stakes. When the city did finally place the stakes, they placed only two — one at each end of the property with several hundred feet located in between them. The city did not stake out the temporary construction easement or the sewer easement.
 {¶ 7} When the Gardners discovered that the city had not staked the property as ordered, they placed additional stakes and spray painted their own markings to indicate the area of the take, the temporary construction easement, and the sewer easement. The Gardners also spray-painted the word "parking" in the area where formerly there had been parking spaces.
 {¶ 8} On the day of trial, before opening statements, the city asked the trial court to deny a jury view or, in the alternative, to require the removal of all stakes and markings placed on the property by the Gardners. After hearing arguments of counsel and viewing photographs of the property with all of the stakes and markings in place, the trial court permitted the parties to inspect the property. Following their inspection, the parties reconvened in the judge's chambers. The trial court, after hearing additional *Page 4 
arguments from counsel, ruled that a jury view would be allowed to proceed and that, although the word "parking" would have to be raked up, the stakes would remain in place. To mitigate any claimed prejudice by the city, the trial court instructed all counsel that they would be given wide latitude in opening statements to discuss any disputed matters regarding the markings that were in place.
 {¶ 9} Following opening statements, the trial court instructed the jury that they were going be allowed to inspect and view the property, that their observations during the jury view were not evidence, and that the only purpose of the visit was to understand the evidence that would be presented to them in the courtroom.
 {¶ 10} The trial court also heard arguments by counsel with regard to various motions in limine filed by the city. Among those motions were requests to preclude testimony by witnesses Ken Marciniak, Gary Yunker, and James Rahe.
 {¶ 11} The first witness, Ken Marciniak was qualified as an expert in industrial real estate leasing in Northwest Ohio and Michigan. He was brought in to testify that if Gardner Signs had to leave the subject property, it would be difficult to lease that property for anything near the value that it had had prior to the take. According to the Gardners, Marciniak's testimony was relevant to lay a foundation for real estate appraiser Robert Keesey's opinions on valuation.
 {¶ 12} The second witness, Gary Yunker, was qualified as a real estate developer. He was called to testify about evaluations and studies he had performed to determine how the subject property should be renovated in order to make it more productive and *Page 5 
attractive for the kind of tenants that would want to occupy that space. It was the Gardners' position that Yunker's testimony, like Marciniak's, was relevant to lay a foundation for Keesey's opinions on damages to the residue.
 {¶ 13} James Rahe, the third witness, was the shop foreman for Gardner Signs. His duties included: handling materials coming in and going out of the shop; coordinating all shop fabrication; ordering materials; shipping finished products; and overseeing the operations of the shop itself. He was called to testify, based on his own personal knowledge, about the impact that the property acquisition would have on deliveries, including ingress and egress by trucks and problems arising in connection with boom trucks operating in closer proximity to relocated overhead power lines. Again, the Gardners argued that Rahe was called to lay a foundation — in this case as to the impact that the acquisition could have on the business use of the subject property — which Keesey could use to opine on damages to the residue.
 {¶ 14} After considering the arguments of counsel, the trial court admitted the testimony of the foregoing witnesses for the limited purpose of establishing a foundation for Keesey's opinions and resulting monetary valuations.
 {¶ 15} At trial, the following valuation evidence was introduced by way of a report performed by appraiser Keesey.[1] According to the report, the residue contained approximately 1.33 net acres of real property. As a result of the appropriation, about 15 *Page 6 
feet of setback from Airport Highway was lost, reducing the remaining setback to just 17 feet. Also lost were six parking spaces from the front of the property. Due to the reduction in acreage, Keesey opined that semi-tractor trailers were going to have greater difficulty entering and leaving the subject property and that traffic on Airport Highway would have to be stopped in order to allow the semi-tractor trailers to back in and make deliveries.
 {¶ 16} Based on these facts, together with additional analyses contained in his report, Keesey found that the value of the subject property was $500,000 before the take and $225,000 after the take, thereby amounting to a total reduction in value of $275,000.
 {¶ 17} After three days of trial, the jury returned a verdict in favor of the Gardners and awarded them $15,950 for the land taken and $157,375 for damage to the residue, for a total award of $173,325. On August 24, 2006, the trial court entered a judgment which awarded appellees "the sum of $173,325, with interest thereon as provided by law, and their court costs herein incurred." The city filed an appeal from this entry on September 21, 2006.
 {¶ 18} On November 8, 2006, the trial court entered another judgment entry on the verdict. This entry specifically provided for interest in the amount of $7,246, if interest was paid within 14 days of the entry. The entry made no mention of an award of court costs. From the entry, the Gardners filed a cross appeal and the city filed an amended notice of appeal.
 {¶ 19} The city, in its appeal, raises the following assignments of error: *Page 7 
 {¶ 20} I. "THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY ABUSING ITS DISCRETION IN ALLOWING A JURY VIEW OF SUBJECT PROPERTY AFTER BEING ADVISED THAT DEFENDANTS' COUNSEL, ON THE EVE OF TRIAL, HAD ALTERED THE PROPERTY IN AN IMPROPER ATTEMPT TO CONVERT THE VIEW INTO AN EVIDENTIARY PROCEEDING."
 {¶ 21} II. "THE TRIAL COURT ERRED BY ORDERING THE PLAINTIFF TO STAKE DEFENDANTS' PROPERTY PRIOR TO TRIAL."
 {¶ 22} III. "THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY ABUSING ITS DISCRETION IN ALLOWING EVIDENCE OF RELOCATION OF UTILITIES, NOT OWNED OR CONTROLLED BY THE PLAINTIFF, WITHIN A PRE-EXISTING RIGHT-OF-WAY AS EVIDENCE OF THIS RELOCATION IS WHOLLY IRRELEVANT AS TO THE DOLLAR VALUE OF THE PROPERTY TAKEN OR THE DAMAGE TO THE RESIDUE AND IMPROPERLY CREATED THE IMPRESSION THAT THE PLAINTIFF WAS RESPONSIBLE OR WRONG IN THE MOVEMENT OF UTILITIES THAT IT NEITHER OWNED NOR CONTROLLED."
 {¶ 23} IV. "THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY ABUSING ITS DISCRETION IN ALLOWING EVIDENCE TESTIMONY OF WITNESSES WHOSE OPINIONS WERE WHOLLY IRRELEVANT TO THE APPROPRIATION PROCEEDINGS AND IMPROPERLY CONFUSED THE ISSUES TO BE DECIDED BY THE JURY." *Page 8 
 {¶ 24} The Gardners, in their cross appeal, raise their own assignments of error, as follows:
 {¶ 25} I. "THE TRIAL COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY NOT ORDERING APPELLANT TO PAY INTEREST AT A RATE OF SIX PERCENT (6%) PER ANNUM FROM THE DATE OF THE TAKE, WHICH THE PARTIES AGREED WAS THE DATE OF FILING THE APPROPRIATION PROCEEDING ON AUGUST 15, 2005, UNTIL PAID IN FULL."
 {¶ 26} II. "THE TRIAL COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION BY NOT ORDERING APPELANT TO PAY USUAL COURT COSTS TO APPELLEES AS THE PREVAILING PARTY."
 {¶ 27} We begin by considering the city's first and second assignments of error, wherein the city claims that the trial court erred, first, in ordering the city to stake the property prior to trial, and, second, in allowing a jury view of the property after the Gardners had altered the property by adding their own demarcations.
 {¶ 28} R.C. 163.12 provides that courts must grant a property owner's request for a jury view in appropriation cases. R.C. 163.12(A). Despite the mandatory wording of the statute, the Supreme Court of Ohio, inCity of Akron v. Alexander (1965), 5 Ohio St.2d 75, has held that under certain circumstances a trial court may exercise its discretion to deny a view. Id., at 77-78. For instance, denial is proper where the only purpose the view could serve would be to show the property in an unfair light or where the trial court, in the exercise of its discretion, finds that the prejudicial nature of the view exceeds its *Page 9 
illustrative benefits or efficacy. Proctor v. Wolber, 3d Dist. No. 5-01-38, 2002-Ohio-2593, ¶ 57.
 {¶ 29} In the current case, the city argued to the trial court, and continues to argue on appeal, that the staking of the property showed the property in an unfair light, had the effect of improperly converting the jury view into an evidentiary proceeding, and impermissibly showed an inaccurate depiction of what the property would look like after the take. We disagree with each of these contentions.
 {¶ 30} The additional stakes and spray-painted markings were neither substantive evidence nor were they prejudicial. They merely provided the jurors with a contextual basis for understanding the evidence that was later presented at trial. Further, there was nothing in the record to suggest that the stakes or markings were inaccurately placed or that they were placed in such a way that would be misleading to the jury. On the facts of this case, we do not find that the trial court erred either in ordering the staking or in permitting the jury view. Accordingly, the city's first and second assignments of error are found not well-taken.
 {¶ 31} We next consider the city's third and fourth assignments of error, wherein the city argues that the trial court erred in allowing testimony that was irrelevant to the appropriation proceedings and improperly confused the issues to be decided by the jury.
 {¶ 32} In an Ohio appropriation case, a landowner is entitled to both compensation for the property actually taken and for damages to the residue. Hilliard v. First Industrial, L.P., 165 Ohio App.3d 335,2005-Ohio-6469, ¶ 8; see also, R.C. 163.14. *Page 10 
Compensation is reflected in the fair market value of the land taken.Hilliard, supra. Damage to the residue is determined by calculating the difference between the value of the residue with the appropriated tract and its value without that portion. Proctor v. Wolber, supra, ¶ 10.
 {¶ 33} Pursuant to R.C. 163.14, a jury assesses damages to the residue. Expert opinion testimony is permitted to assist the jury in its assessment. Hilliard, supra, ¶ 10. Such testimony must be expressed in terms of the difference between pre-and post-appropriation fair market values of the residue. Id. "In determining both pre-and postappropriation values, every element should be considered that can fairly enter into the question of value and that an ordinarily prudent businessperson would consider before forming judgment in making the purchase." Id., citing Hurst v. Starr (1992), 79 Ohio App.3d 757, 763.
 {¶ 34} In the instant case, it is undisputed that Marciniak, Yunker, and Rahe did not testify in terms of the difference between pre-and post-appropriation fair market values of the residue. As indicated above, however, their testimony was admitted only for the limited purpose of establishing a foundation for Keesey's opinions and the dollar amounts he arrived at. Within this context, such testimony was certainly relevant and, in this court's opinion, would not result in unfair prejudice to the city.
 {¶ 35} Troubling to us in this analysis is the fact that the record fails to support the Gardners' claim that the disputed testimony, in fact, established a foundation for Keesey's opinions. If anything, the record demonstrates otherwise. Keesey specifically states in *Page 11 
his report, "The physical inspection and analysis that form the basis of the report have been conducted by the undersigned with no significant professional assistance from others unless so stated." No mention is made in the report (or in Keesey's deposition testimony, for that matter) of any assistance by Marciniak, Yunker, or Rahe. Further, because (as noted above) Keesey's trial testimony was not transcribed for the record in this appeal, we are unable to derive any assistance from that portion of the proceedings.
 {¶ 36} On the other hand, also notably absent from the record is evidence of any objection by the city to the effect that the testimony in question did not form a basis for Keesey's figures. At trial, the city's only objection to the subject testimony addressed Rahe's statements concerning relocation of the power lines and the relevance of those statements to a determination of damages in this case.
 {¶ 37} The law is clear in Ohio that failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal. Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121. An issue otherwise waived because of a failure to object may be brought up on appeal only through the doctrine of plain error. Id. In civil appeals, "the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Id., at syllabus. *Page 12 
 {¶ 38} Here, we cannot say that any error in the admission of the disputed evidence has challenged or undermined the legitimacy of the judicial process. The jury's award of damages totaling $173,325 was amply supported by Keesey's clearly admissible appraisal, which measured the damages in this case to be as high as $275,000. The city's third and fourth assignments of error are found not well-taken.
 {¶ 39} Finally, we consider the Gardners' assignments of error, challenging the trial court's November 8, 2006 judgment entry, which provided for interest in the amount of $7,246 if interest was paid within 14 days of the entry, and which did not provide for an award of costs. With regard to the award of interest, the Gardners specifically complain that the trial court erroneously calculated the interest as owing from the date of the take, August 15, 2005, to the date of the verdict, in August 2006. Instead, the Gardners argue, interest should accrue from the date of the take until the award is paid in full. The city agrees with this contention.
 {¶ 40} R.C. 163.17 relevantly provides:
 {¶ 41} "Where the agency has the right to take possession of the property before the verdict upon payment into court of a deposit, and a portion of said deposit may be withdrawn immediately by the owner, the amount of the verdict which exceeds the portion of the deposit withdrawable shall be subject to interest from the date of taking to the date of actual payment of the award."
 {¶ 42} Based on our reading of R.C. 163.17, we find that interest in this action does accrue from August 15, 2005, through the date upon which the judgment entry is *Page 13 
fully paid. As indicated in the statute, interest is not paid on any funds that are on deposit with or have been withdrawn from the court. In this case, the city has not paid the amount of the verdict which exceeds the amount of the deposit, i.e., $144,920. As a result, pursuant to R.C.163.17, the Gardners are entitled to interest on $144,920 until such amount is paid.
 {¶ 43} The Gardners additionally assert that, as the prevailing party, they are entitled to an award of costs pursuant to Civ.R. 54. Again, the city does not dispute this contention. We, too, are in agreement, and conclude that on remand, the trial court should award the Gardners costs.
 {¶ 44} For the foregoing reasons, the Gardners' assignments of error on cross appeal are both found well-taken.
 {¶ 45} The judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded to the trial court for further proceedings consistent with this decision on the issues of costs and interest. The city of Toledo is ordered to pay the costs of the appeal and cross appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART. *Page 14 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., William J. Skow, J., Thomas J. Osowik, J., Concur.
[1] Although the portion of the trial transcript that is contained in the record indicates that Keesey was scheduled to testify at trial, no transcript or other evidence of any such testimony is included in the record. *Page 1