CITY OF HILLIARD, Appellant,

v.

FIRST INDUSTRIAL, L.P. et al., Appellees.

[Cite as *Hilliard v. First Industrial, L.P.*, 158 Ohio App.3d 792, 2004-Ohio-5836.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 03AP–1019.

Decided Nov. 4, 2004.

Griffith & Worth and Charles R. Griffith, for appellant.

Goldman & Braunstein, Michael Braunstein, and William A. Goldman; Michael T. Shannon, for appellee First Industrial, L.P.

BROWN, Judge.

{¶ 1} The city of Hilliard, Ohio, plaintiff-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which a jury ordered Hilliard to pay First Industrial, L.P., defendant-appellee, $820,000 as compensation for real property taken pursuant to eminent domain and for damages to the residue.

{¶ 2} At the end of 1997, First Industrial acquired 62.675 acres of real property in Hilliard, Ohio, near the intersection of Cemetery Road and Interstate 270. The real property had structures on it and a network of private roads, including a full-service access point from Cemetery Road, that were used by a business that leased the property. Sometime in 1998, First Industrial was notified of a road improvement and construction project planned by Hilliard that would affect the property. The project called for Hilliard to take by eminent domain 6.92 acres of First Industrial's property, leaving 55.552 acres as residue. The project would eliminate a full-access point to the property from Cemetery Road and called for a limited-access point approximately 1,500 feet away from the original access point. The new construction would also destroy an internal service road leading to First

Industrial's loading dock. On January 14, 2002, Hilliard passed an ordinance appropriating the interests in First Industrial's property and directing that a petition be filed to assess the compensation to be paid for those interests. Although First Industrial did not challenge Hilliard's right to appropriate the land, the parties could not reach an agreement as to the compensation to be paid for the real property appropriated and the value of damages to the residue.

{¶ 3} On March 20, 2002, Hilliard filed the present petition for appropriation, seeking to appropriate the 6.92 acres of First Industrial's property and establish just compensation for the real property appropriated and the value of damages to the residue. A jury trial commenced on July 8, 2003. The only issue before the jury was the compensation for the property taken and the damage to the residue. The jury awarded $520,000 as compensation for the real property taken and $300,000 for damages to the residue. On July 24, 2003, the trial court entered judgment on the jury verdict. Hilliard appeals from the judgment of the trial court, asserting the following assignments of error:

   I.   The verdict of the jury and judgment of the trial court are contrary to the weight and sufficiency of the evidence.

   II.  The verdict of the jury and the judgment of the trial court are excessive.

   III. The verdict of the jury and the judgment of the trial court are contrary to law.

{¶ 4} We will address all of Hilliard's assignments of error together, as they are all related. Hilliard asserts in its first assignment of error that the jury's verdict was against the manifest weight of the evidence and based upon insufficient evidence. Hilliard argues in its second assignment of error that the jury's verdict was excessive. Hilliard argues in its third assignment of error that the jury verdict and judgment were contrary to law. With regard to the argument on sufficiency of the evidence, the standard of review in a civil case is similar to the standard for determining whether to sustain a motion for judgment notwithstanding the verdict. *Hartford Cas. Ins. Co. v. Easley* (1993), 90 Ohio App.3d 525, 630 N.E.2d 6. Thus, this court must determine whether there is some competent and credible evidence going to all of the essential elements of the case, construing the evidence in favor of First Industrial. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273; see, also, *Collins v. Ohio State Univ. College of Dentistry* (June 27, 1996), Franklin App. No. 96API02–192, 1996 WL 362052. In deciding whether to reverse a judgment of the trial court on the basis that the verdict is against the manifest weight of the evidence, an appellate court conducts the same manifest-weight analysis in both criminal and civil cases. *Flowers v. Whitehall*, Franklin App. No. 01AP–1150, 2002-Ohio-3890, 2002 WL 1767274, at ¶ 12. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibili-

ty of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Further, every reasonable presumption must be made in favor of the judgment and the findings of fact. *Flowers*, supra, at ¶ 13, citing *Miller–Wagenknecht v. Munroe Falls* (Dec. 5, 2001), Summit App. No. 20324, 2001 WL 1545626. If the evidence is susceptible of more than one construction, we must give it that interpretation that is consistent with the verdict and judgment and most favorable to sustaining the trial court's verdict and judgment. Id.

{¶ 5} In a partial taking, a property owner is entitled to compensation for the property taken and " 'damages' for injury to the property which remains after the taking, *i.e.,* the residue." *Norwood v. Forest Converting Co.* (1984), 16 Ohio App.3d 411, 415, 16 OBR 481, 476 N.E.2d 695. Hilliard does not contest the jury's verdict as it relates to the compensation for the taking but contests only the jury's award for the damages to the residue. Thus, the errors alleged in Hilliard's assignments of error relate only to the jury's award for damages to the residue. Damage to the residue is measured by the difference between the pre- and postappropriation fair market value of the residue. *Hurst v. Starr* (1992), 79 Ohio App.3d 757, 763, 607 N.E.2d 1155; *In re Appropriation for Hwy. Purposes* (1968), 15 Ohio App.2d 131, 133, 44 O.O.2d 258, 239 N.E.2d 110. In determining both pre- and postappropriation fair market values, every element that can fairly enter into the question of value and that an ordinarily prudent businessperson would consider before forming judgment in making a purchase should be considered. *Norwood* at 415, 16 OBR 481, 476 N.E.2d 695. Accordingly, any element of damage that makes "the residue less valuable in its separate state after its taking than it was as a part of the whole before the taking" may properly be considered. Knepper & Frye, Ohio Eminent Domain Practice (1977) 270–271, Section 9.06. Among the elements that may be important are loss of ingress and egress and any other losses reasonably attributable to the taking. Id.; see, also, *In re Appropriation for Hwy. Purposes,* supra.

{¶ 6} Here, the jury awarded $300,000 for damages to the residue. Hilliard contends that the damages to the residue are measured solely by the difference between the fair market value before the appropriation of the residue and the fair market value of the residue after appropriation. Hilliard points out that the appraiser for First Industrial, Robert Weiler, testified that the remaining land continued to be valued at least as high per acre as it was prior to the taking and there were no damages to the remainder. Hilliard also points out that its appraiser, Henry Halas, testified that there was $28,580 in damages to the

residue. Thus, Hilliard maintains that, at the most, the jury could have awarded only $28,580 for damages to the residue. Hilliard does admit that Kevin Smith, a senior regional director for First Industrial, testified that it would cost $300,000 to reconstruct the destroyed internal road that led to its loading dock; however, Hilliard maintains that Smith's testimony did not give any opinion of the fair market value of the residue before the taking, the value after the taking, and the difference in value, but was only an opinion of the costs of necessary improvements to make the site functional. Hilliard asserts that the cost necessary to reconstruct the internal road may not be included as damages to the residue.

{¶ 7} First Industrial counters that the costs to reconstruct the internal roadway are considered part of the damages to the residue. It maintains that because the loss of the roadway made the residue less valuable, it may be properly considered as part of the damages to the residue. First Industrial asserts that any element affecting the fair market value of the property can be considered, including disturbed ingress and egress, and costs of required improvements.

{¶ 8} We agree with First Industrial that the $300,000 to reconstruct the internal road may be considered in determining the damages it sustained to its residue. Circuity of travel to and from real property is not compensable. *State ex rel. Merritt v. Linzell* (1955), 163 Ohio St. 97, 56 O.O. 166, 126 N.E.2d 53. However, circuity of travel created within the property owner's property is compensable. *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 667 N.E.2d 8. Circuity of travel within one's own property occurs when one entrance or exit way is removed and another is not created. Id. In the present case, Hilliard has created circuity of travel within First Industrial's site. It has taken away a point of ingress and egress to and from First Industrial's internal loading dock and failed to create another point of ingress and egress to and from the loading dock. Although there is no right to compensation if the damages are those generally shared by many property owners, *Hurst,* supra, 79 Ohio App.3d at 764, 607 N.E.2d 1155, in the present case, the resulting interference affects only First Industrial's property and is not merely an inconvenience shared in common with the general public. See *Merritt,* supra. Here, the impairment is specific to First Industrial's property and burdens only its property. See id.; see, also, *State ex rel. Noga v. Masheter* (1975), 42 Ohio St.2d 471, 71 O.O.2d 484, 330 N.E.2d 439; *Castrataro v. Lyndhurst* (Aug. 27, 1992), Cuyahoga App. No. 60901, 1992 WL 209578 (when circuity of travel is created within one's own property, the burden is placed solely on that property and not on the general public). Thus, because the improvements to the roadway did not result in any feasible alternative route, an impairment resulted creating circuity of travel to and from First Industrial's loading dock. See *Steubenville v. Schmidt,* Jefferson

App. No. 01 JE 13, 2002-Ohio-6894, 2002 WL 31812740, at ¶ 20. Therefore, we agree that the $300,000 to create a new point of ingress and egress to and from First Industrial's loading dock may be considered in determining the damage to the residue property.

{¶ 9} However, it is well established by clear and venerable case law that an opinion as to the damages to the residue must be expressed in terms of the difference between the pre- and postappropriation fair market value of the residue. See *Ry. Co. v. Gardner* (1887), 45 Ohio St. 309, 322, 13 N.E. 69 (it is improper for a witness to state his opinion on the amount of damages arising from an appropriation of property without giving an opinion as to the value of the property before and after the appropriation); *Wray v. Stvartak* (1997), 121 Ohio App.3d 462, 476, 700 N.E.2d 347 (in giving an opinion as to the damages to the residue, an expert is required to state the before and after fair market values of the property); *Masheter v. Kebe* (1973), 34 Ohio App.2d 32, 36, 63 O.O.2d 58, 295 N.E.2d 429 ("The proper procedure to be followed is for the expert to give his opinion as to the value of the property prior to the taking and the value of the residue after the taking"); *Am. Louisiana Pipe Line Co. v. Kennerk* (1957), 103 Ohio App. 133, 139, 3 O.O.2d 201, 144 N.E.2d 660 ("A witness qualified to give an opinion with respect to value should be required to state such opinion separately as to the value before and after and also be permitted to testify as to the elements or basis upon which he has formed such opinion"). This rule prohibiting damage testimony without indicating the pre- and postappropriation fair market values of the residue applies equally to the testimony of an expert appraiser and the property owner. See *Powers v. Ry. Co.* (1878), 33 Ohio St. 429, 437, 1878 WL 10; *Gardner,* supra.

{¶ 10} In the present case, Smith's testimony was only that it would cost $300,000 to make the site functional. At no time during Smith's testimony was he ever asked to give or did he ever give an opinion as to what the fair market value of the residue was prior to and after the taking as a result of the destroyed access to its loading dock. First Industrial's appraiser, Weiler, also failed to relate the destroyed access to the loading dock to the diminution in fair market value of the residue. Weiler testified only that the remaining land continued to be valued at least as high per acre as it was prior to the taking, which clearly considered only the raw value of the land on a per-acre basis and did not take into account the diminution in fair market value as a result of the decrease in functionality caused by the destruction of the access point leading to the loading dock. Accordingly, Smith's and Weiler's damages testimony did not use the proper method of valuation, and the jury could not properly have relied upon it.

{¶ 11} Hilliard's appraiser, Halas, also failed to testify using the correct measure of damage to the residue. Nowhere in the record do we find Halas's opinion as to the difference between the pre- and postappropriation fair market

values of the residue. Hilliard seems to argue that Halas's opinion was that the diminution in value to the residue was $28,580. However, this figure was specifically based upon the "[d]amages to the right residue of 1.233 acres due to very poor configuration causing inutility due to setback requirements under the Hilliard, Ohio 'M–5' zoning code." Clearly, this figure was not based upon the use of the pre- and postappropriation fair market values of the residue. Therefore, Hilliard's evidence as to the damages to the residue was also deficient. However, Halas did testify that there would be a diminution in value to real property that has inadequate internal roadways as opposed to real property with functional internal roadways. Thus, Hilliard's own appraiser believed there was at least some decrease in value to the residue as a result of the destruction of First Industrial's access to its loading dock.

{¶ 12} First Industrial attempts to support the jury's award by arguing that because the $300,000 needed to construct a new internal roadway decreased the fair market value of the residue, the jury's award may be reasonably inferred to reflect this reduced fair market value of the residue. However, although the lack of a roadway leading to the loading dock may cause a diminution in fair market value of the property, it is not necessarily true that the diminution in fair market value of the property would be directly proportional, on a dollar-for-dollar basis, to the cost to rebuild the road. First Industrial endeavors to analogize the present situation to one in which a homeowner remodels her kitchen for $30,000. First Industrial contends that a reasonably prudent businessperson would consider the remodeling relevant to value and, correspondingly, increase his or her opinion of the fair market value of the house by $30,000. However, First Industrial's conclusion is faulty. It is well recognized that the cost to improve real property is not necessarily proportional to any increase in the fair market value the real property may experience as a result of the improvement. A home that has undergone $30,000 in remodeling costs does not necessarily experience an increase in fair market value of $30,000. Indeed, under some circumstances, improvements, such as a swimming pool, might not increase the value of the real property at all. Likewise, in the present case, even though it may cost $300,000 to reconstruct an internal roadway, it cannot be said that the fair market value of the property lacking the roadway is necessarily $300,000 less. If either Smith or Weiler had testified that the fair market value would have decreased exactly in proportion to the cost of the road improvement, that would have been relevant testimony that the jury could have relied upon. However, as neither Smith nor Weiler testified as to the effect of the destroyed access to the loading dock on the fair market value, the jury could not properly rely upon their testimony to establish value.

{¶ 13} Under some circumstances, the cost to rebuild the interior roadway may be the proper measure of damages. Where damage is caused to

the residue of property remaining after a taking and if, by the expenditure of money in an amount less than the difference between the before and after fair market value of the residue, the property owner could make improvements to the residue to restore the fair market value of the residue to what it was before the improvement, then evidence of the "cost of cure" would be admissible and, if proved, would limit the amount of damages to be assessed. *Stvartak*, supra, citing *Columbus v. Farm Bur. Coop. Assn.* (1971), 27 Ohio App.2d 197, 203, 56 O.O.2d 382, 273 N.E.2d 888. However, before a party can use a cost-of-cure analysis, it is clear that the party must establish the diminution in value of the land after the taking by deducting the fair market value of the property after the taking from the fair market value before the taking. *Proctor v. Jamieson* (Apr. 6, 2001), Shelby App. No. 17–2000–19, 2001 WL 335189, citing *Farm Bur. Coop.*, at 203, 56 O.O.2d 382, 273 N.E.2d 888. As we have found that there was no proper evidence of the difference between the fair market value of the residue after the taking and the fair market value of the residue before the taking, the cost-of-cure alternative could not be analyzed.

{¶ 14} The jury apparently believed there was some diminution in value to the residue. We find there was sufficient evidence to support the jury's determination insofar as it awarded some amount of damages. Both Smith and Halas testified that the value of the property would be lower based upon the destruction of the access to the loading dock. However, the jury improperly relied upon the testimony of Smith alone to determine damages. The jury was required to calculate damages to the residue by subtracting the postappropriation fair market value of the residue from the preappropriation fair market value of the residue. The jury having failed to do this, its verdict was not supported by the evidence. As the jury believed the residue had some resulting diminution in value but used an improper method to calculate damages, the matter must be remanded for a damages-only hearing with regard to the residue. For these reasons, Hilliard's assignments of error are sustained as they relate to the jury's valuation of the damages to the residue.

{¶ 15} Accordingly, Hilliard's three assignments of error are sustained, and the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part. With regard to the jury's verdict relating to compensation for the taking, the judgment of the trial court is affirmed. The jury's verdict relating to the damages to the residue is reversed. The matter is remanded to the trial court for a damages-only hearing with regard to the residue.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

LAZARUS, P.J., and SADLER, J., concur.