BOARD OF COUNTY COMMISSIONERS OF CLARK COUNTY, Appellee,

v.

SEMINOLE AVENUE REALTY et al., Appellants.

[Cite as *Clark Cty. Bd. of Commrs. v. Seminole Ave. Realty,* 179 Ohio App.3d 37, 2008-Ohio-5462.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2008 CA 19.

Decided Oct. 17, 2008.

38

Andrew P. Pickering, Assistant Prosecuting Attorney, for appellee.

Randall M. Comer and Richard F. Heil Jr., for appellants.

DONOVAN, Judge.

{¶ 1} Defendant-appellant Seminole Avenue Realty ("Seminole") appeals a decision of the Clark County Court of Common Pleas, General Division, awarding permanent and temporary sewer easements to plaintiff-appellee Board of County Commissioners of Clark County, Ohio ("the board"). The matter was tried to a jury on April 11, 2007. During the trial, the court limited the testimony of Seminole's real estate appraisal expert pursuant to a motion in limine filed by the board prior to trial. Ultimately, the jury returned a verdict in favor of Seminole and awarded damages of $37,282 for the value of the property to be taken by the board by eminent domain. On February 19, 2008, the trial court issued a final appealable order granting the board permanent and temporary sewer easements across a tract of land owned by Seminole. Seminole filed a timely notice of appeal with this court on March 4, 2008, in which it argued that the damages amount awarded at trial would have been significantly higher if its expert's testimony had not been unfairly limited by the trial court.

I

{¶ 2} The instant appeal stems from an appropriations action initiated by the board in regard to a 5.51–acre parcel of land located in Clark County and owned by Seminole. The purpose of the action was to obtain a permanent easement for the installation and maintenance of a sewer line, as well as a temporary construction of the sewer line, which would run diagonally through the middle of the land parcel owned by Seminole.

{¶ 3} Seminole retained Bruce E. Schenck, a real estate appraisal expert, in order to determine the damages resulting from the land appropriation. Schenck generated a report on September 1, 2003, in which he calculated the resultant damages suffered by Seminole to be approximately $118,570. In his report, Schenck stated that he reached that amount by computing the damage to the residue. "Damage to the residue is measured by the difference between the pre- and post-appropriation fair market value" of the property that remains after the taking. *Hilliard v. First Indus., L.P.,* 158 Ohio App.3d 792, 2004-Ohio-5836, 822 N.E.2d 441, ¶ 5.

{¶ 4} On July 5, 2006, the board filed a motion in limine, which requested the trial court to prohibit the introduction of certain portions of Schenck's appraisal report at trial. The board also sought to limit Schenck's testimony with respect to his expert opinion regarding his valuation of the residue of the subject property after the appropriation occurred. The board's motion in limine sought to (1) prohibit any consideration of the highest and best use of the subject property that was not permitted by its current residential zoning, (2) prohibit any consideration of Schenck's damage to residue calculations because they were allegedly based on an impermissible calculation of lost profits, and (3) exclude Schenck's $118,570 damage-to-residue calculations because his report did not specifically state the fair market value before and after the appropriation.

{¶ 5} After extensive briefing by both parties, the trial court issued an order sustaining in part and overruling in part the board's motion in limine on September 13, 2006. Specifically, the trial court overruled the first section of the motion in limine regarding highest and best use of the subject property and sustained the latter two portions of the motion in limine that attacked the valuation method utilized by Schenck to calculate the damage to the residue. Thus, the trial court's ruling allowed Schenck to testify regarding his expert opinion that the highest and best use of the subject property was as an assisted living facility or a long-term care facility. However, the court's ruling restricted him from testifying regarding damage to the residue after the appropriation.

{¶ 6} The matter proceeded to trial on April 11, 2007, during which Seminole called Schenck to testify regarding his expert opinion of the valuation of the

subject property. Pursuant to its prior ruling, the trial court prohibited Schenck from testifying with respect to his damage calculation of $118,570. Additionally, the trial court required that all mention of that sum be redacted from Schenck's appraisal report before it was submitted to the jury as Defense Exhibit A. The jury awarded Seminole damages for the appropriation as follows: (1) $6,342 for the permanent easement, (2) $940 for the temporary easement, and (3) $30,000 for damage to the residue, for an aggregate sum of $37,282 in damages.

{¶ 7} On February 19, 2008, the trial court issued its final journal entry awarding the permanent and temporary sewer easements to the board. It is from this judgment that Seminole now appeals.

## II

{¶ 8} Seminole's sole assignment of error is as follows:

{¶ 9} "The trial court committed error prejudicial to defendants by excluding from evidence the testimony and written appraisal report of defendants' expert appraiser regarding the damage to the residue after plaintiff's land appropriation by eminent domain, where defendants' expert appraiser utilized the legally accepted income or economic approach based upon capitalization of net income to value defendants' potential income-producing property."

{¶ 10} In its sole assignment of error, Seminole contends that the trial court committed reversible error when it partially sustained the board's motion in limine and excluded the expert testimony of Schenck, as well those portions of his appraisal report, regarding damage to the residue. Seminole argues that had Schenck been permitted to testify regarding the fair market value of the 5.51–acre tract of land before and after the appropriation, the jury would have awarded Seminole the amount of $118,570, which represents the damage to the residue as calculated by Schenck.

{¶ 11} "The decided weight of authority supports the proposition that much must be left to the discretion of the trial court in the matter of admitting or rejecting evidence relating to the value of appropriated property." *Canton v. George* (Apr. 22, 1985), 5th Dist. No. CA–6496, 1985 WL 9200. Moreover, decisions concerning the admission of evidence are within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 407 N.E.2d 490. An abuse of discretion means more than a mere error of law or judgment; it implies an attitude on the part of the trial court that is arbitrary, capricious, or unreasonable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 12} The Fifth Amendment to the United States Constitution, made applicable to the states by virtue of the Fourteenth Amendment, guarantees that private property shall not "be taken for public use, without just compensation." Analogously, Section 19, Article I of the Ohio Constitution provides:

{¶ 13} "Private property shall ever be held inviolate, but subservient to the public welfare. * * * [W]here private property shall be taken for public use, a compensation therefor shall first be made in money * * *."

{¶ 14} When a government agency appropriates property, the owner may be entitled to a two-fold remedy. *Norwood v. Forest Converting Co.* (1984), 16 Ohio App.3d 411, 415, 16 OBR 481, 476 N.E.2d 695. The owner is entitled to "compensation" for the property actually taken. Id. Compensation is defined as the fair market of the property. If the taking is only partial, the owner may be entitled to "damages." Id. Damages are the injury resulting from the taking to the "residue" of the property still held by the owner, less any special benefits accruing to the residue from improvements. Id. Damage to the residue is measured by the difference between the pre- and post-appropriation fair market value of the residue. *Hilliard v. First Indus., L.P.*, 158 Ohio App.3d 792, 2004-Ohio-5836, 822 N.E.2d 441, ¶ 5.

{¶ 15} The term "fair market value" is usually defined as that price which would be agreed upon between a willing seller and a willing buyer in a voluntary sale on the open market. *Masheter v. Ohio Holding Co.* (1973), 38 Ohio App.2d 49, 53, 67 O.O.2d 262, 313 N.E.2d 413. In determining the fair market value of the subject property before and after the appropriation, " 'every element that can fairly enter into the question of value, and which an ordinarily prudent business man would consider before forming judgment in making a purchase, should be considered.' " *Sowers v. Schaeffer* (1951), 155 Ohio St. 454, 459, 44 O.O. 419, 99 N.E.2d 313, quoting 29 Corpus Juris Secundum, Eminent Domain, Section 136, at 971.

{¶ 16} The rule of valuation in a land-appropriation proceeding is not what the property is worth for any particular use, but what it is worth generally for any and all uses for which it might be suitable, including the most valuable uses to which it can reasonably and practically be adapted. *Evans v. Hope* (1984), 12 Ohio St.3d 119, 121, 12 OBR 161, 465 N.E.2d 869.

{¶ 17} "In calculating fair market value of real property, real estate appraisers employ three recognized methods of appraisal: (1) cost of reproducing the property, less depreciation; (2) market data approach utilizing recent sales of comparable property; and (3) the income or economic approach based upon the capitalization of net income," quoted by *Wray v. Hart* (Aug. 13, 1992), Lawrence

App. No. 91CA20, 1992 WL 208900, citing Knepper & Frye, Ohio Eminent Domain Practice (1977) 231–232, Section 8.08.

{¶ 18} In the instant case, Seminole's expert, Schenck, utilized the income or economic approach based upon the capitalization of net income to determine the damage to the residue. In order to determine the pre- and postappropriation fair market value of the residue, Schenck estimated the income that the subject property would most likely produce if a nursing home or assisted-living facility was built on the property. Factors present in Schenck's damages analysis included actual lost buildable area at the site after the portion of land for the easement was appropriated, as well as the "net present value of lost income."

{¶ 19} Schenck's appraisal also considered the "net operating income" of the proposed facility as a basis upon which to calculate the damage to the residue. In order to estimate the net operating income, Schenck considered eight sales of similar facilities in the surrounding region. Schenck then took the average net operating income (derived from the eight similar sales) and multiplied that number by the number of rooms he estimated would exist in the proposed facility. Ultimately, using the average of net room incomes from other facilities, Schenck opined that if a certain number of the rooms at the facility were occupied, the preappropriation value of the subject property would be approximately $179,532. Based on the same calculations, Schenck's appraisal stated that the postappropriation value of the subject property would be $60,962. Using the difference between those two amounts, Schenck's appraisal stated that the damage to the residue was approximately $118,570.

{¶ 20} Seminole argues that the manner in which Schenck calculated his appraisal was proper because the income and cost approaches employed by Schenck were legitimate methodologies for appraising commercial properties. Further, Seminole asserts that Schenck's calculations were not in any way based on loss of future profits or the recovery of lost profits from businesses that could have been located on the subject property absent the appropriation. Rather, Seminole contends that Schenck's residue analysis was based on the traditionally accepted income or economic approach based upon capitalization of net income. Thus, Seminole argues that the trial court abused its discretion when it prohibited Schenck from testifying with respect to his damage to the residue calculation, as well as requiring that all mention of that sum be redacted from Schenck's appraisal report before it was submitted to the jury.

{¶ 21} The board, on the other hand, argues that the trial court correctly limited Schenck's testimony and appraisal report because both were impermissibly based upon lost future profits from the proposed assisted living facility on the subject property. This is known as the "business losses" rule. *Cincinnati v. Banks* (2001), 143 Ohio App.3d 272, 285, 757 N.E.2d 1205. The

business-losses rule is a judicial construct that holds that the owner of appropriated property may not be compensated for the loss of future profits from any commercial enterprise on the property. Id., citing *Preston v. Stover Leslie Flying Serv., Inc.* (1963), 174 Ohio St. 441, 23 O.O.2d 100, 190 N.E.2d 446, paragraph five of the syllabus. "The theory underlying the application of the rule by Ohio courts to deny compensation for lost future profits is that commercial profits 'depen[d] * * * upon the acumen and skill of the one who carries on the business.' *Sowers v. Schaeffer,* 155 Ohio St. at 459, 44 O.O. at 421, 99 N.E.2d at 317." Id. Evidence of profits derived from a proposed business conducted on the subject property is too speculative, uncertain, and remote to be considered as a basis for computing or ascertaining the market of the appropriated property. *Preston,* 174 Ohio St. 441, 23 O.O.2d 100, 190 N.E.2d 446, paragraph five of the syllabus. The business-losses rule provides the trial court in an appropriations proceeding a basis upon which to exclude evidence of lost profits because such profits "are not relevant to a determination of the issue of just compensation or that the admission of such evidence might confuse the jury and lead to an improper award." *Cincinnati v. Banks,* 143 Ohio App.3d at 285, 757 N.E.2d 1205. "As such, loss of future profits or the income potential of [a subject property] are inappropriate means by which to measure a property's fair market value." *Wray v. Stvartak* (1997), 121 Ohio App.3d 462, 472, 700 N.E.2d 347.

{¶ 22} After a thorough review of the record and the arguments submitted by both parties, we hold that the trial court did not abuse its discretion when it restricted the testimony of Schenck regarding his valuation of the damage to the residue of the subject property. The 5.51-acre tract of land was originally zoned for single-family residences. Testimony was adduced at trial that the highest and best use for the property, according to Seminole, was as an assisted-living facility or nursing home. At no point prior to the commencement of the appropriation proceedings, however, was an application filed to have the subject property rezoned so that a nursing home could be built. Nevertheless, all of Seminole's witnesses testified that the highest and best use of the subject property was as an assisted-living facility that did not presently exist and was not contemplated prior to the appropriation proceedings. Additionally, we agree with the board that the portions of Schenck's appraisal report, as well as his own testimony, that analyze and calculate the damage to the residue are based on speculation of future profits from a hypothetical assisted-living facility. Speculation, based on supposed future profits from a hypothetical business, cannot be the basis upon which the damage to the residue can be properly and reliably calculated. The trial court did not abuse its discretion when it prohibited Schenck from testifying regarding damage to the residue calculated by him at $118,570. Thus, the trial court

correctly required that all mention of that sum be redacted from Schenck's appraisal report before it was submitted to the jury.

{¶ 23} Seminole's sole assignment of error is overruled.

### III

{¶ 24} Seminole's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

BROGAN and GRADY, JJ., concur.