[Cite as *Bd. of Cty. Commrs. v. Prindle*, 2018-Ohio-1452.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**

| | | |
|---|---|---|
| THE BOARD OF COUNTY COMMISSIONERS, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | : | **CASE NOS. 2016-T-0117** |
| | : | **2016-T-0118** |
| - vs - | : | |
| VINCENT PRINDLE, et al., | : | |
| Defendants-Appellants. | : | |
| | : | |

Civil Appeals from the Trumbull County Court of Common Pleas, Case Nos. 2015 CV 02094 and 2014 CV 00354.

Judgment: Affirmed.

*Dennis Watkins,* Trumbull County Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481; and *James M. Brutz,* Assistant Prosecutor, 842 Youngstown-Kingsville Road, Vienna, OH 44473 (For Plaintiff-Appellee).

*Frank R. Bodor*, 157 Porter Street, N.E., Warren, OH 44483 (For Defendants-Appellants).

CYNTHIA WESTCOTT RICE, J.

{¶1}  Appellants, Vincent Prindle and Vickie Prindle, appeal the judgment of the Trumbull County Court of Common Pleas in favor of appellee, The Board of County Commissioners ("the county"), denying appellants' complaint for a writ of mandamus. At issue is whether the trial court abused its discretion in denying the writ and in finding

that appellants failed to present clear and convincing evidence of a permanent taking of access rights to their property. For the reasons that follow, we affirm.

{¶2} On February 19, 2014, the county filed, in Case No. 2014-CV-00354, a petition for appropriation of a temporary easement on appellants' commercial real property located on High Street in Cortland to perform the work necessary to reconstruct a walk, drive, parking lot, and grading in connection with a county road-widening project. The easement was to last for 18 months from the date of entry by the county. Appellants filed an answer denying the material allegations of the complaint.

{¶3} While the appropriation case was pending, the road-widening project began in late October 2014, and was completed one month later in late November 2014.

{¶4} On November 25, 2015, after the county's appropriation case had been pending for nearly two years, appellants filed, in Case No. 2015-CV-02094, a separate action for a writ of mandamus. They alleged that, during the county's use of the temporary easement, it installed curbing along appellants' property in the road right of way. They alleged the curbing blocks appellants' vehicular access to the building on the property. Appellants demanded a writ of mandamus to compel the county to amend its appropriation action to include a taking of appellants' access rights. The county filed an answer denying the material allegations of the complaint.

{¶5} On March 16, 2016, the trial court consolidated the county's appropriation action with appellants' mandamus action. Each case had its own trial docket until the two actions were consolidated, after which, the case proceeded on the appropriation case docket. Following a trial, the court resolved the mandamus action by a judgment

2

entered pursuant to Civ.R. 54(B), and the appropriation action remains pending. On appeal, appellants filed two notices of appeal, one for each of the cases. Both notices state that the judgment being appealed is the court's judgment denying appellants' complaint for a writ of mandamus. While the appeals were pending, this court, sua sponte, consolidated them for all purposes, and the parties' respective briefs included both appellate case numbers. The only issues raised on appeal involve the mandamus action.

{¶6} The matter was referred to the magistrate, who held a trial on appellants' complaint for mandamus on July 14 and 15, 2016.

{¶7} Vincent Prindle testified that he took title to the property as a gift from his mother-in-law in 2009. He said that the store-front building on the property was built in 1960 by his father-in-law, and that since that time it has been used as a laundromat, a church, a music store, and, finally, a used furniture store operated by appellants' most recent tenant, Patti Keller.

{¶8} Mr. Prindle said that, before the construction project, there was no curbing in front of the property. He said that during the project, curbing was installed along the front of the property, except for access to the parking lot on the north (left) side of the building. He said that at the front of the building, there is a ramp leading to the main entrance, which is a set of double doors. He said that, due to the curb, there is no way to drive *directly* from the street to the ramp for loading/unloading. He said that for this reason, Ms. Keller moved out of the building.

{¶9} Mr. Prindle said the parking lot on the north side of the building continues to provide ingress and egress for the building. He said the building can still be entered

3

through the ramp and main entrance at the front of the store. He said the building can also be accessed through a door on the north side of the building. He said he could not recall if he lost any parking spots in the parking lot due to the project. He said that before the construction project, patrons of the property who parked in front of the building exited the property by backing into the road. He was not aware of Cortland's ordinance prohibiting this practice.

**{¶10}** Mr. Prindle said that since Ms. Keller left the building in September 2014, he has not listed the property for sale or rent and he now uses the building for storage.

**{¶11}** Patti Keller testified she owns a used furniture business. She said she operated her business out of appellants' building from 2009 to September 2014.

**{¶12}** Ms. Keller said that before the road-widening project, she used the ramp in front of the main entrance to load and unload furniture by backing her box truck from the road onto the ramp. She said her employees then brought the furniture down the ramp and put it in the truck. She said that before the project, there were two parking spaces in front of the building. She also had full use of the parking lot.

**{¶13}** Ms. Keller said that she moved out of the building in late September 2014, when she saw the future plans for the project, which included the installation of curbing along the front of the store. She said she moved out within days of seeing these plans because she would no longer be able to load/unload her truck at the main entrance and she would lose the two parking spaces in front of the store. Work on the project did not begin until late October 2014, one month after she moved out.

**{¶14}** Gary Shaffer, Trumbull County Deputy Engineer and project manager for the road-widening project, testified that the county used the temporary easement in front

4

of the building to store materials and equipment. Although the term of the easement was for 18 months, the county only used it for about one month from October 30, 2014 to November 26, 2014, when work on the project was completed.

{¶15} Mr. Shaffer said that the county can do virtually anything it chooses for the public good within the road right-of-way.

{¶16} Mr. Shaffer said that during construction of the project, a six-inch curb was built at the edge of the road within the right of way along the frontage of appellants' property, except for the entrance to the parking lot on the north side of the building. Next to the curb, a two-foot wide tree lawn and then a sidewalk were installed. He said the right-of-way extends one foot past the edge of the sidewalk, which means the right of way comes right up to the base of appellants' ramp.

{¶17} While Mr. Shaffer testified that the curbing is an obstruction to the front of the building, he also said that, after the project, the driveway leading to the parking lot continues to provide ingress and egress access to the property.

{¶18} Donald Whitman, Cortland Safety Director, who is also a professional engineer and attorney, testified that curbing was installed to match curbing installed on other streets in the city consistent with Ohio Department of Transportation policies. He said that during the design process for the instant project, a public meeting was held on December 5, 2011, to solicit public comment from affected property owners and that Mr. Prindle attended that meeting. Mr. Whitman said that during the meeting, plans were displayed for the public, depicting the proposed curbing in front of appellants' property. Mr. Prindle admitted that he attended the meeting; that he was provided with a copy of the plans; and that he never complained about the proposed curbing.

5

{¶19} Mr. Whitman said that curbing is a standard practice according to the Ohio Department of Transportation Location and Design Manual for urban roads with low speed limits. He said that since the speed limit is 35 mph in the area, curbing was necessary for the safety of vehicular movement.

{¶20} Mr. Whitman referenced Cortland Ord. 1125.09(d), effective 1996, which provides: "All [commercial] off-street parking * * * shall be designed so that vehicles can turn around within the area and enter the street, road, or highway in such a manner as to completely eliminate the necessity of backing into the street, road, or highway." Mr. Whitman said that Ord. 1125.09(d) "requires businesses to have a parking area design so that vehicles can turn around *completely on that property* prior to entering the road right of way [to] eliminate the necessity of backing into the street, road, or highway." (Emphasis added.) He said the purpose of this ordinance is for the safety of the motoring public.

{¶21} Further, Ord. 1125.09(e) requires that commercial property owners provide off-street parking spaces in compliance with the dimensions specified.

{¶22} Mr. Whitman said that appellants did not lose any parking spaces in front of the building as a result of the curbing because, even before the curbing, the front of the building could not legally be used for parking. This is because backing a car out into the road (which Mr. Whitman indicated would be necessary to enter the road) would violate the city's parking regulations.

{¶23} Mr. Whitman said that when a new business comes into the city, he explains the parking requirements to the owner. He said that when Ms. Keller moved in,

6

he told her she could not park in front of the building and that she could only park in the parking lot.

**{¶24}** On July 25, 2016, the magistrate issued her decision recommending that the writ of mandamus be denied. In support, the magistrate found that, after the construction, access remains to the frontage of the property and that, as such, access to the property from High Street was not destroyed or substantially impaired. Further, the magistrate found that parking in front of the building was prohibited by the city's parking ordinances.

**{¶25}** Appellants filed objections to the magistrate's decision. The court overruled the objections and adopted the magistrate's decision. The court found that appellants failed to show they had a clear legal right to a writ of mandamus and denied the writ. The court made the finding under Civ.R. 54(B) that there is no just reason for delay, making its judgment a final, appealable order. Appellants appeal the trial court's judgment, asserting three assignments of error. Because the assigned errors are related, they are considered together. They allege:

**{¶26}** "[1.] The magistrate and trial court committed prejudicial error and abused its [sic] discretion in determining that access to the Prindles' property from High Street was not destroyed or substantially impaired.

**{¶27}** "[2.] The magistrate and trial court committed prejudicial error and abused their discretion in applying city of Cortland Ordinance 1125.09(d) to deprive the owners of a writ of mandamus for the taking of their access rights.

**{¶28}** "[3.] The magistrate and trial court committed prejudicial error and absued [sic] its [sic] discretion in applying Cortland Ordinance 1125.02 and 1125.09 and

7

determining that the owners [sic] use of the parking spaces did not constitute a non-conforming use as a reason to deprive the owners of a writ of mandamus for the blocking of its access."

{¶29} The Tenth District, in *State ex rel. BDFM Co. v. Ohio Department of Transportation*, 10th Dist. Franklin No. 11AP-1094, 2013-Ohio-107, stated:

> {¶30} In the context of a taking, "The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation. * * * Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged." *State ex rel. Shemo v. Mayfield Hts.*, 95 Ohio St.3d 59, 63 (2002) * * *. Because "[m]andamus is an extraordinary writ that must be granted with caution," a party seeking a writ of mandamus must "establish entitlement to the requested extraordinary relief by clear and convincing evidence." *State ex rel. Liberty Mills, Inc. v. Locker*, 22 Ohio St.3d 102, 103 (1986); *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, ¶16 * * *. *BDFM* at ¶14.

{¶31} Further, this court, in *RG Steel Warren, L.L.C. v. Biviano*, 11th Dist Trumbull No. 2014-T-0064, 2015-Ohio-5463, ¶59, stated:

> {¶32} In order to be entitled to a writ of mandamus, a relator must establish: (1) a clear legal right to the relief sought, (2) a clear legal duty on the part of the respondent to perform the requested act, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.*, 108 Ohio St.3d 432, 2006-Ohio-1327, ¶34. The relator bears *a heavy burden* in a mandamus case and *must submit facts and produce proof that is plain, clear, and convincing before a court is justified in using the "strong arm of the law" by granting a writ of mandamus. State ex rel. Pressley v. Indus. Comm. of Ohio*, 11 Ohio St.2d 141, 161 (1967). Further, mandamus is * * * *issued only when the right and duty are absolutely clear; the writ will not issue in doubtful cases. State ex rel. E. Cleveland v. Norton*, 8th Dist. Cuyahoga No. 98772, 2013-Ohio-3723, ¶2, citing *State ex rel. Taylor v. Glasser*, 50 Ohio St.2d 165 (1977).  (Emphasis added.)

8

{¶33} Thus, appellants, as the parties seeking a writ of mandamus, had the burden to prove their entitlement to the writ by clear and convincing evidence. As such, they were required to prove that they had a clear legal right to compensation for a permanent taking of access rights to their property; that the county had a clear legal duty to compensate them for such alleged taking; and that appellants had no adequate remedy at law.

{¶34} With respect to the issues presented here, the Tenth District, in *Vineyard Fellowship v. Anderson*, 10th Dist. Franklin Nos. 15AP-151, 15AP-230, 2015-Ohio-5083, discussed the city's authority under a public right-of-way, as follows:

> {¶35} The term "right-of-way" "is generally understood as referring to the *easement acquired by the public* in that portion of the land of the owner thereof over which a road or highway passes, with *all the powers and privileges that are necessarily incident to such easement*." 1988 Ohio Atty.Gen.Ops. No. 88–080 * * *.
>
> {¶36} * * *
>
> {¶37} [N]ormally this right-of-way would include the shoulder or berm. R.C. 4511.01(UU)(2) defines "[r]ight-of-way" as "[a] general term denoting land, property, or the interest therein, usually in the configuration of a strip, acquired for or devoted to transportation purposes. When used in this context, right-of-way includes *the roadway, shoulders or berm, ditch, and slopes extending to the right-of-way limits* under the control of the state or local authority."
>
> {¶38} * * *
>
> {¶39} In Ohio, "while the public has the right of improvement and uninterrupted travel, the abutting owner has the right to all uses of the land not inconsistent with this right of travel and improvement." *Callen v. Columbus Edison Elec. Light Co.*, 66 Ohio St. 166, 172 (1902). "'* * * The abutting owner has every right to all uses of the land *not inconsistent with such right of improvement and travel*, or with the rights of access thereto of other abutting owners.'" *Miller v. Berryhill Nursery Co.*, 7 Ohio App.2d 30, 33 (2d Dist.1966), quoting 27 Ohio Jurisprudence 2d 207, Highways and Streets, Section 165.

**{¶40}** *The easement for a public highway includes the right to construct, maintain, and improve a safe and convenient roadway. "The [City] has the right to improve and use the land upon which a common highway has been established." State ex rel. E. Ohio Gas Co. v. Bd. of Cty. Comm. of Stark Cty.*, 5th Dist. Stark No. 2012 CA 00019, 2012-Ohio-4533, ¶40.

**{¶41}** There was testimony in the record that the City could install sidewalks along Cooper Road and, under Ohio law, *the sidewalk would then also be considered part of the street and the public right-of-way. * * * Pretzinger v. Sunderland*, 63 Ohio St. 132, 140 (1900) (sidewalk considered part of street). (Emphasis added.) *Vineyard, supra*, at ¶28-35.

**{¶42}** Since the grant or denial of a writ of mandamus necessarily requires the trial court to exercise discretion, an appellate court reviews such decision under the abuse of discretion standard. *BDFM* at ¶13.

**{¶43} I. THE RAMP AND MAIN ENTRANCE TO THE BUILDING**

**{¶44}** Here, the trial court, in adopting the magistrate's decision, found: "In the case at bar, after construction there remains access to the frontage of the property to the north of the building. As such, the [court] cannot find that access to the property from High Street was destroyed or substantially impaired."

**{¶45}** Appellants do not dispute that they still have access to the parking lot as well as the ramp and main entrance to the building. Rather, they argue the county's installation of curbing during the project destroyed their access from the street directly to the ramp/main entrance for loading/unloading without creating an alternative access. However, appellants' argument lacks merit because *they still have access to the ramp/main entrance from High Street just a few feet to the left of the ramp.*

**{¶46}** Photographs of the front of the building, taken after construction was completed, show a large paved area between the driveway (leading to the parking lot)

10

and the ramp (leading to the main entrance). These photographs show the driveway provides direct and unobstructed access from the street to the side of the ramp. The driveway and paved area next to the ramp are clearly large enough and close enough to the ramp for a truck to back up to the side of the ramp. Cortland Safety Director Whitman testified the city's parking regulations *allow* vehicles to back into a driveway or parking lot of a business from the street. Thus, after the construction project, appellants and users of their property can back their trucks from the street into the driveway and then to the side of the ramp to be loaded or unloaded. They can then legally exit the property by driving forward into the street.

**{¶47}** Ms. Keller testified that her box truck would "back up to the ramp" and "we would bring stuff down the ramp this way and [put it] into the box truck." With the truck backed up to the side of the ramp, appellants can just as easily load or unload the truck from that location. Thus, contrary to appellants' argument, the curbing did not prevent them from using the ramp and main entrance to load and unload merchandise. As a result, there was no taking because, after the construction, trucks can still be loaded and unloaded at the ramp.

**{¶48}** Appellants' reliance on *State ex rel. OTR v. Columbus*, 76 Ohio St.3d 203 (1996), and *Hilliard v. First Industrial, L.P.,* 158 Ohio App.3d 792, 2004-Ohio-5836 (10th Dist.), is misplaced as those cases are easily distinguishable. In *OTR*, the Court held that re-grading of the city street resulted in a taking because it prevented an abutting business owner from ever having access to the street. *Id*. at 209. In *Hilliard*, a taking occurred where the city's construction project destroyed a road leading to the property's loading dock without creating an alternative road to the dock. *Id*. at 794.

11

**{¶49}  II.  PARKING IN FRONT OF THE BUILDING**

**{¶50}**  Turning now to appellants' argument that the county has deprived them of the right to use the front of their building for parking, this argument also lacks merit.

**{¶51}**  The trial court found that because appellants took title to the property in 2009, which was long after the effective date of Ord. 1125.09, that ordinance applies to them.  Appellants essentially make two arguments in support of their position that they are entitled to park in front of the building.  Under the first, they argue that, without the curbing, they could comply with Ord. 1125.09(d).  Under the second, they argue this ordinance does not apply to them.  Both arguments lack merit.

**{¶52}**  First, appellants try to show that, without the curbing, it was possible to design parking so as to comply with Ord. 1125.09(d).  As noted above, that section requires that all off-street commercial parking "be designed so that vehicles can turn around within the area and enter the street * * * in such a manner as to completely eliminate the necessity of backing into the street * * *."

**{¶53}**  Appellants argue that, before the curbing, vehicles parked in front of the building could be angled in such a way as to avoid encroaching in the right-of-way.  In making this argument, they rely on Deputy Engineer Shaffer's testimony that if vehicles were parked at a "severe" angle (nearly parallel to the front of the building), they could avoid being in the right-of-way.  However, even if parking at an angle would avoid encroaching in the right-of-way, this does not mean cars would have enough room to turn around on appellants' property before entering the street without backing into it, as required by the ordinance.

12

{¶54} Since the right of way comes right up to the ramp making it impossible for appellants to turn around on their property, they argue the ordinance should be interpreted to allow them to back up into the right-of-way and use *both their property and the right-of-way* to turn around before entering the street. However, according to the clear terms of the ordinance, vehicles are required to turn around on the owner's property before they enter the street. Further, nothing in the ordinance suggests the right of way can be used to turn around. According to Safety Director Whitman, the right-of-way is owned by the city. Thus, it is to be used for public uses, such as streets, curbs, tree lawns, and sidewalks, not for private uses. If the right-of-way could be used to turn around, this would defeat the purpose of the ordinance – to promote the safety of the motoring public. Further, as Mr. Whitman said, Ord. 1125.09(d) requires businesses like appellants' to have a parking area design so that vehicles can turn around "completely" on that property before exiting the property.

{¶55} Further, pursuant to the case law outlined above, the city had the right to install the curb, tree lawn, and sidewalk within the right-of-way and, once installed, appellants could not use the right-of-way to turn around because this would be inconsistent with the city's right of improvement and uninterrupted travel. *Vineyard, supra*.

{¶56} We agree with the trial court's finding that appellants failed to prove that, without the curbing, it is possible to design parking spots in front of the building so that vehicles could turn around within the area and enter the street without having to back out, as required by Ord. 1125.09(d). Thus, appellants had no right to park in front of the

13

building and the city's improvement project did not result in a taking of such alleged right.

{¶57} We also agree with the trial court's finding that appellants failed to prove they were entitled to park in front of the building because they failed to prove that parking there could satisfy the size requirements for parking spaces in Ord. 2511.09(e).

{¶58} Second, appellants argue (somewhat awkwardly) that since the prior tenants were commercial, they, i.e., appellants, should be permitted to park in front of the building as a nonconforming use without having to comply with Ord. 1125.09(d).

{¶59} A nonconforming use is a *lawful use* of property in existence at the time of enactment of a *zoning ordinance* that does not conform to the requirements under the new ordinance. *Janson v. John Bininato, Zoning Inspector*, 11th Dist. Ashtabula Nos. 2015-A-0039 and 2015-A-0040, 2016-Ohio-2796, ¶24. Appellants fail to cite any case law holding that the nonconforming use doctrine applies to matters of public safety, such as regulations prohibiting the practice of backing out into a public street. Further, appellants failed to prove that at the time Ord. 1125.09(d) was enacted, parking in front of the building was lawful, i.e., that it was in compliance with all land use or other applicable regulations. Moreover, Mr. Whitman indicated that any such use was abandoned under Ord. 1125.02 because, after 1125.09(d) was enacted, the property was vacant for more than two years before Ms. Keller moved in. We therefore agree with the trial court's finding that appellants failed to prove that parking in front of the building constitutes a nonconforming use allowed under Ord. 1125.02.

{¶60} Further, appellants' argument that Ord. 1125.02(b), which provides that a nonconforming use may be changed to a conforming use, is irrelevant. This provision

14

applies when a property owner uses a parcel for a nonconforming use (e.g., a commercial use in a district zoned residential) and later decides to use the property for a residential use. Under Ord. 1125.02(b), the residential use would be allowed. However, since there is no dispute that appellants' property is zoned commercial and has previously been used for commercial purposes, Ord. 1125.02(b) does not apply.

{¶61} Finally, appellants argue that Ord. 1125.09(d) is unconstitutional because it confiscates appellants' alleged "back-out" rights without compensation. However, the issue was not litigated in trial and appellants fail to demonstrate on appeal that they had a right to back out into the street or that Ord. 1125.09(d) is unconstitutional.

{¶62} Based on the record, the trial court did not abuse its discretion in denying appellants a writ of mandamus and in finding they failed to present clear and convincing evidence that the county destroyed or substantially impaired their access to the main entrance or to the front of the building for parking.

{¶63} For the reasons stated in this opinion, the assignments of error are overruled. It is the order and judgment of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, P.J., concurs in judgment only,

COLLEEN MARY O'TOOLE, J., dissents.

15