CITY OF DUBLIN, Appellee,

v.

PEWAMO LTD., Appellant.

[Cite as *Dublin v. Pewamo Ltd.*, 194 Ohio App.3d 57, 2011-Ohio-1758.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–499.

Decided April 12, 2011.

Schottenstein Zox & Dunn Co., L.P.A., Alan G. Starkoff, Philip K. Hartmann, Jeremy M. Grayem, and Asim Z. Haque, for appellee.

Vorys, Sater, Seymour and Pease L.L.P., Bruce L. Ingram, Joseph R. Miller, and John M. Kuhl, for appellant.

TYACK, Judge.

{¶ 1} This is an appeal from an appropriation action brought by appellee, the city of Dublin, Ohio, to acquire property from appellant, Pewamo Ltd., for the public purpose of road improvements to State Route 161 ("SR 161"). To improve

the road, Dublin acquired approximately three acres of a 60–acre tract with frontage along SR 161 and Cosgray Road.

{¶ 2} Therll Clagg purchased the entire tract in 1999 for $20,000 per acre as an investment. He later formed Pewamo Ltd. and transferred the property to Pewamo. The parcel was undeveloped, zoned for agricultural use, and used for farming. Prior to the taking, the property had what has been referred to as three access points on SR 161. The access points were dirt and gravel areas designed for farm-vehicle access. One was a semicircle with both ends opening onto SR 161, and one was a single entrance.

{¶ 3} As part of Dublin's 2007 Community Development Plan, the property was included in an area designated the "Central Ohio Innovation Center." The plan specified future development of the property as high-density office/research and development. The parties' appraisers hypothesized that such use would be the highest and best use of the property. However, Pewamo's appraiser later downgraded her earlier appraisal to lower-intensity commercial use centering on office use.

{¶ 4} At the heart of the parties' dispute was the loss of value, if any, of the roughly 57–acre residue. That controversy centered on access to SR 161. Pewamo contended that its losses were in the area of $4 to $6 million, because access to and from SR 161 was limited to a single 16–foot–wide driveway. Dublin contended that Pewamo had adequate access to the highway for future development and therefore there was no loss of value to the residue.

{¶ 5} In a partial taking such as this, a property owner is entitled to compensation for the property taken and for the loss of value of the property that remains after the taking, known as the residue. *Hilliard v. First Indus., L.P.,* 158 Ohio App.3d 792, 2004-Ohio-5836, 822 N.E.2d 441, ¶ 5. The loss of value of the residue is measured by the difference between the fair market value before the appropriation and the fair market value after the appropriation. Id.

{¶ 6} "In determining both pre- and postappropriation fair market values, every element that can fairly enter into the question of value and that an ordinarily prudent businessperson would consider before forming judgment in making a purchase should be considered." Id. See also *Masheter v. Hoffman* (1973), 34 Ohio St.2d 213, 221, 63 O.O.2d 357, 298 N.E.2d 142. Among the important elements to consider are loss of ingress and egress and any other losses reasonably attributable to the taking. *Hilliard* at ¶ 5.

{¶ 7} At trial, the jury traveled to the site to view the premises, heard expert testimony, and examined maps, drawings, photos, appraisal reports, and plans for the highway project. After deliberations, the jury awarded Pewamo $685,051 as compensation for the three-acre taking. The jury awarded no damages for the

loss of value of the residue. Pewamo appealed asserting the following assignments of error:

I. The trial court erred to the prejudice of Pewamo by allowing evidence, testimony and argument that Pewamo would have access to a state highway in the future when Dublin's project engineer denied that such access existed and the project plans and specifications actually prohibited such access.

II. The trial court erred to the prejudice of Pewamo by refusing to instruct the jury that it could not consider speculative and potential future access to Pewamo's property in determining the damages to the residue but instead must assume that the property will be used in the most damaging way possible as reasonably revealed from the project plans and specifications.

III. The trial court erred to Pewamo's prejudice by refusing to give a proper and complete jury instruction on internal circuity of travel as required under clear and controlling Tenth District precedent.

IV. The trial court erred to Pewamo's prejudice by admitting into evidence the appraisal report and valuation testimony of Dublin's appraiser.

V. The jury's finding of zero damage to the residue of Pewamo's property was against the weight of evidence.

{¶ 8} The first and second assignments of error relate to the evidence and jury instructions regarding access to SR 161. Our standard of review regarding the admission or exclusion of evidence is abuse of discretion. *Barnett v. Sexten*, 10th Dist. No. 05AP–871, 2006-Ohio-2271, 2006 WL 1230676, ¶ 5. An abuse of discretion means more than an error of law or judgment. Rather, an abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

{¶ 9} In this case, Pewamo argues that the trial court erred as a matter of law by admitting evidence about future access to the residue by means of a roundabout that had been constructed on what was formerly Pewamo's property. Pewamo argued that the residue lost value due to the limitation of access to SR 161 to a single 16–foot driveway. Pewamo presented evidence that there was no current access to SR 161 by means of the roundabout, and that Dublin had no plans to create such access.

{¶ 10} Barbara Cox, the engineering manager for development in Dublin, testified that any right-of-way from SR 161 is under the Ohio Department of Transportation's ("ODOT") jurisdiction. She also stated that ODOT directed Dublin to create the 16–foot driveway. Cox further testified that there was currently no other access to the Pewamo property because the property was in an agricultural state. She stated that when Dublin was finished with the current

project, access from the roundabout would not be permitted. Based on this testimony, Pewamo argues that the jury should not have heard any evidence that there would be access by means of the roundabout because it was speculative and therefore inadmissible.

{¶ 11} Dublin's appraiser based his opinion of no loss of value of the residue on the assumption that Pewamo would have enhanced access to SR 161 by way of the access drive and by means of the roundabout. The jury heard evidence that there was an access point on the roundabout that would allow ingress and egress to the residue, although the point was currently closed. Dublin conceded that there were no plans to complete the access at the time because the residue was still being farmed, and the 16–foot driveway was adequate for farm vehicles needing access to the property. Moreover, Dublin did not want to allow farm vehicles to enter and exit by means of the roundabout because it was a safety hazard. In other words, the road project did not interfere with the agricultural use to which the Pewamo property had been previously devoted. The 16–foot paved driveway provided access for farm vehicles just as the prior dirt and gravel accesses had provided.

{¶ 12} The testimony of witnesses was that the 16–foot access could be widened in the future, but ODOT would have to approve any additional access. Cox also testified that access to the roundabout could be allowed at some time, but was not currently part of Dublin's five-year capital-improvement plan.

{¶ 13} Pewamo relies upon the case of *Cent. Ohio RR. Co. v. Holler* (1857), 7 Ohio St. 220, for the proposition that compensation due a landowner may not be reduced by promises of future improvements or access on the land taken. Pewamo argues that by extension, this case holds that a jury, when assessing damages, cannot take promises of future access into account.

{¶ 14} In *Holler*, the landowner was awarded damages of $150 for a railroad right-of-way, with the railway to construct a wagon way and a stop for cattle. The Supreme Court of Ohio held that statutory and constitutional law required that compensation to a property owner be assessed and made in money unless the landowner agreed to the nonmonetary compensation. Id. at 225.

{¶ 15} The *Holler* case bears little similarity to the instant case. Here, the testimony showed that Dublin did not make any promises of future access by means of the roundabout or any other access points on SR 161. Dublin offered only monetary compensation for the taking. Dublin's appraiser, Dr. Robert Weiler, testified as follows:

Q. After the project if [the owner] desires to seek to have the property rezoned, whatever he desires that rezoning application to contain, would he be

in a position to request access by—through the roundabout and also directly from Route 161?

A.   If he elects to under his plan utilize the roundabout, which I believe he'd be smart to do.   You want to use the roundabout because you want to have access off of Route 161 if you can, and this is certainly something you would want to have in if you could get approval.   But the fact that the plans do say or it's blocked off or obviously ODOT does not want or the city or anyone else want farm equipment going on the roundabout into the subject property, which is why it's blocked off—but it does say on the plans to be improved by others. So there is a—at least the intent which the plans were prepared that the road would be continued at the cost of others.

{¶ 16} The evidence established the existence of an ingress and egress point on the roundabout that would provide access into Pewamo's property.   It was included in the plans for the roadway project that were admitted into evidence. It was undisputed that at the time of trial, the access point was blocked off. Dublin took the position that access was prohibited because the land was zoned for agricultural use.   Dublin did not want farm vehicles using the roundabout. The appraisers discussed future development on the land and its possible uses such as high-density office, research, and retail.   The evidence showed that Dublin's part of the project did not include opening that access point, but when or if the property were rezoned to be developed beyond an agricultural use, the access point was there, and, according to Dublin's appraiser, an owner would be smart to take advantage of it.

{¶ 17} Both appraisers considered the roundabout based on certain hypothetical assumptions.   Primarily they looked at the highest and best use of the property.   The appraisers based their valuations as if the property were presently being used for commercial purposes.

{¶ 18} Pewamo's appraiser considered the project and opined that there was no SR 161 access apart from the 16–foot driveway.   She then concluded that the property had sustained a loss of value of several million dollars because of lack of access and problems with internal circuity of travel.   Dublin's appraiser was aware that the plans included an access point opening onto the Pewamo property from the roundabout, and he agreed with other witnesses that it was not part of the current project.

{¶ 19} If the jury could not consider testimony about the closed access point on the roundabout, the jury would hear only one side of the case.   As discussed in *Hilliard*, 158 Ohio App.3d 792, 2004-Ohio-5836, 822 N.E.2d 441, an ordinarily prudent businessperson would consider the presently closed access point as an element that could fairly enter into the question of value.   The jury could infer that the roundabout access to the Pewamo property would be available at some

time in the future; otherwise, why construct an access point at all at that location? The existence of the roundabout access point was a fact in evidence. Dublin never promised to open the access point in the future. Instead, Dublin offered testimony that the access point was presently closed to farm traffic and that "the intent which the plans were prepared [was] that the road would be continued at the cost of others."

{¶ 20} The evidence concerning the roundabout was susceptible of more than one interpretation. After first assuming the highest and best use for the property, the appraisers either assumed that the access in the future could remain as it exists today or the access point on the roundabout could be opened when actual commercial development takes place. The trial court did not err by allowing the jury to make that determination as part of their overall assessment of the appraisers' opinions.

{¶ 21} Pewamo relies upon the case of *Weir v. Bornhorst* (May 13, 1981), 3d Dist. No. 2–80–21, 1981 WL 6852, to support its contention that the jury was required to assess the loss of value of the residue in the most damaging way possible, and therefore could not consider the appraiser for Dublin's analysis and conclusions. In other words, Pewamo argues that the jury could assess damages only on the basis of their being no access to SR 161 from the roundabout.

{¶ 22} In *Weir,* ODOT acquired .93 acre from the landowner for highway purposes. The trial court instructed the jury to the effect that the loss of value of the residue was to be calculated with a view that ODOT would make use of the appropriated ground in the most damaging way. The court of appeals upheld the instruction noting that "[s]uch use would include use in the most damaging way *reasonably foreseeable* as revealed by the plans and specifications." (Emphasis added.) Id.

{¶ 23} *Weir* in turn, relied upon *Masheter v. Blaisdell* (1972), 30 Ohio St.2d 8, 59 O.O.2d 48, 282 N.E.2d 42, in which the Supreme Court of Ohio held:

In a highway appropriation proceeding, where a perpetual easement for highway purposes is sought, the proper standard by which damages to the residue of the landowner's property are to be measured is one which limits allowable damages to those which are reasonably foreseeable.

Id. at paragraph one of the syllabus.

{¶ 24} The court went on to state:

The proper measure of damages is those damages which are reasonably foreseeable and which might reasonably be expected to occur in the intended use of the property.

Id. at 11.

Damages in a highway appropriation proceeding are limited to a consideration of the present intended use of the land taken by the Director of

Highways for highway purposes, as revealed by the plans and specifications for the improvement, filed in the proceedings as required by statute, in the absence of evidence of other reasonably foreseeable damages.

Id. at paragraph two of the syllabus.

{¶ 25} Here, the jury had to decide what damages were reasonable and foreseeable as revealed by the plans and specifications of the highway project. As discussed previously, the plans were for the area to be part of an area designated as the "Central Ohio Innovation Center." The plan specified future development of the property as high-density office/research and development. The roundabout was constructed to provide access from SR 161 to Industrial Parkway. The jury heard testimony that the property was currently being farmed and thus the only access to SR 161 was from the dirt and gravel driveways that were to be replaced by a paved driveway. There was testimony that the 16-foot driveway could be widened with permission from ODOT. The jury also heard that the roundabout access point that opened onto the Pewamo property was part of the construction project, although it was presently closed. Knowing that the property was being considered for further development, the jury once again had to assess why the access point to the Pewamo property was built. Dublin's appraiser testified that the intent of the plans was that the road off the access point would be completed at the expense of others. The jury was free to conclude that if there were no purpose for the access point, and it would never lead onto the Pewamo property even in a developed state, the construction would be a road to nowhere.

{¶ 26} The jury had to determine what damages were reasonably foreseeable based on all the evidence. *Masheter*, 30 Ohio St.2d at 11, 59 O.O.2d 48, 282 N.E.2d 42. After reviewing the plans, intentions of the parties, and the assessment of the appraisers of the highest and best use for the property, the jury had to decide whether the more credible, reasonably-foreseeable-damages theory was that of Dublin or that of Pewamo. At trial, the credibility of Pewamo's appraiser was an issue because she created different reports with differing appraisal values that appeared to be based on the same set of facts, and comparable sales. If the trial court had only permitted the jury to hear Pewamo's theory of the case, the jury would not have been able to assess whether the roundabout had an impact on the value of the residue. The jury was not and should not have been required to determine damages based only on Pewamo's theory that there would never be more than a 16-foot driveway leading to SR 161.

{¶ 27} With respect to the jury instructions, we note that in *Cleveland Elec. Illum. Co. v. Astorhurst Land Co.* (1985), 18 Ohio St.3d 268, 18 OBR 322, 480 N.E.2d 794, paragraph one and two of the syllabus, the Supreme Court of Ohio held that the Rules of Civil Procedure apply to land-appropriation proceedings,

and that Civ.R. 51(A) abolishes the necessity of the trial court to give special instructions as requested by counsel.

{¶ 28} Our standard of review when it is claimed that improper jury instructions were given is to consider the jury charge as a whole and determine whether the charge misled the jury in a manner affecting the complaining party's substantial rights. *Kokitka v. Ford Motor Co.* (1995), 73 Ohio St.3d 89, 93, 652 N.E.2d 671.

{¶ 29} Pewamo requested an instruction which read as follows:

When assessing the impact of the project on Defendant's property, you may not consider alleged future potential benefits or *statements of Dublin promising future potential benefits* that may or may not be provided to the property, rather, you must assume that the property will be used in the most damaging way possible as reasonably revealed from the project plans and specifications.

(Emphasis added.)

{¶ 30} Here, Pewamo's requested instruction could have misled the jury, since the evidence was that Dublin had made no promises of future potential benefits. Instead, the trial court gave the following instruction adapted from Ohio Jury Instructions 609.09:

In addition to the compensation for the property taken, the owner is entitled to any decrease in the fair market value of the residue that is the direct result of the appropriation. If the residue is less valuable because of the appropriation, then you must consider such injury and determine the amount of such decrease in the fair market value caused by the appropriation. This will be the amount awarded for damages to the residue.

{¶ 31} This instruction was a correct statement of the law. It was not misleading and allowed the jury to decide the issue of damages. Thus, the trial court did not err in rejecting the proposed instruction.

{¶ 32} The first and second assignments of error are overruled.

{¶ 33} In its third assignment of error, Pewamo argues that the trial court erred by refusing to give a proper and complete jury instruction on internal circuity of travel within the property. Pewamo's appraiser downgraded the value of the residue because she believed the circuity of travel within the residue was compromised by the removal of the dirt and gravel agricultural drives that were replaced by the 16–foot wide driveway. Debra Wilcox testified, "What was important was the loss of access on State Route 161 and the 16–foot driveway. That limited what—how you could get in and out of the property. That changed the internal circulation once you got in what you could do with the property." Pewamo requested an instruction defining circuity of travel as follows:

The Defendant, as owner of the property, is also entitled as part of any damages awarded to be paid for any circuity of travel created within the land owned by the Defendant as a result of the appropriation. Circuity of travel within one's own property occurs when one entrance or exit is removed or closed and is not replaced or reopened.

{¶ 34} An owner of property abutting a public highway such as SR 161 possesses as a matter of law a right or easement for purposes of ingress and egress to and from his property. This right may not be taken away, destroyed, substantially, or unreasonably impaired without compensation. *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 667 N.E.2d 8, syllabus.

{¶ 35} Pewamo's proposed instruction was derived from *Hilliard,* 158 Ohio App.3d 792, 2004-Ohio-5836, 822 N.E.2d 441, at ¶ 8. In that case, roadway improvements that relocated an access point to the property destroyed an internal service road leading to First Industrial's loading dock. The court held that costs to reconstruct the internal road were compensable as damages. The city of Hilliard took away a point of ingress and egress to and from First Industrial's loading dock and failed to create another point of ingress and egress to and from the loading dock. Id.

{¶ 36} Similarly, in *Thieken v. Proctor,* 180 Ohio App.3d 154, 2008-Ohio-6960, 904 N.E.2d 619, ODOT installed curbing that completely blocked access from one entrance way and limited access from another point to a 42–foot curb cut, tapering to a 30–foot driveway. Id. at ¶ 16. This resulted in tanker trucks being forced to either back in or back out of a gas station on the property. Id. at ¶ 18.

{¶ 37} Both of these cases involved restriction of access to developed property, and this court found circuity of travel within the properties. In *Hilliard,* the court found internal circuity of travel because the improvements left no feasible alternative route to First Industrial's loading dock that pre-existed the road project. Likewise, *Thieken* involved restrictions on tanker access to a previously existing gas station. No such restriction of access was demonstrated in the instant case because there were no structures on the land. Rather, a paved road allowing the same access for farm traffic replaced farm roads that allowed access of vehicles necessary to farm the property. Pewamo's appraiser admitted on cross-examination that the farm driveways would not be suitable for commercial use, and Pewamo's engineer testified that if the property were developed as something other than agricultural, the farm drives would be likely to change. Thus, unlike in *Hilliard* and *Thieken,* removal of the dirt and gravel access roads did nothing to impair access to Pewamo's property.

{¶ 38} The jury heard testimony both for and against Pewamo's internal-circuity-of-travel argument, and they were given an instruction that they could

compensate Pewamo for the property's loss of value due to internal circulation. However, the instruction as requested was misleading because in this case, the removal of the farm roads had no effect on the internal circulation of the property.

{¶ 39} The third assignment of error is not well taken and is overruled.

{¶ 40} In its fourth assignment of error, Pewamo argues that Dr. Weiler's report and testimony should have been stricken at trial because his valuation of the land was not current as of the date of the taking.

{¶ 41} On October 16, 2008, Dublin filed its appropriation action and deposited $548,041 with the court in order to take immediate possession of the property pursuant to R.C. 163.03(B). This amount was consistent with Weiler's appraisal of October 29, 2007. ·

{¶ 42} R.C. 163.59(E) requires a public agency, after two years have passed since the date of the initial appraisal, to obtain a new appraisal or to have the initial appraisal updated.

{¶ 43} Dublin complied with the statute and obtained an appraisal of the property as of the date of the taking, in this case, October 16, 2008. James Horner valued the property at $320,691 less than the amount deposited. Between the time of Weiler's appraisal and Horner's appraisal, there was testimony that there had been a decline in value due to the conditions in the real estate market in late 2008.

{¶ 44} Pewamo convinced the trial court that Horner's more recent appraisal report should not be allowed into evidence before the jury for fear that the jury might award less than the amount of the deposit made available to Pewamo. Pewamo successfully argued that Weiler's appraisal created a floor for the jury's assessment of damages. Pewamo argued that it should not have to forfeit any portion of the money already withdrawn in the event Dublin obtained its desired verdict.

{¶ 45} Although Dublin did not raise the issue of the trial court's ruling as an assignment of error, Dublin argues that there was no reason to strike Horner's report, because the situation feared by Pewamo is dealt with by statute.

{¶ 46} R.C. 163.17 reads:

If the amount of any deposit actually withdrawn by the owner exceeds the final award from which no appeal is or can be taken, then the owner at the time of entry of judgment on such award shall refund at once to the court for the account of the agency the amount of such excess plus interest on such excess from the date of withdrawal of such excess until the date of such refund, and

upon the failure of the owner to make such refund, the agency shall be entitled to a money judgment against the owner.

{¶ 47} Even though the trial court did not permit the jury to hear about Horner's appraisal, Dublin complied with the statute. The statute says nothing about invalidating the previous appraisal done by Weiler. Pewamo will not be permitted to take advantage of an error that it invited or induced the trial court to make. *State ex rel. Fowler v. Smith* (1994), 68 Ohio St.3d 357, 359, 626 N.E.2d 950. Furthermore, it makes no sense to instruct the jury to use Weiler's appraisal as a floor if his appraisal is struck. Since Pewamo actually benefited by the use of Weiler's appraisal, it cannot argue prejudicial error by using Weiler's appraisal instead of Horner's.

{¶ 48} The fourth assignment of error is not well taken and is overruled.

{¶ 49} In its fifth assignment of error, Pewamo argues that the jury's award of zero damages for the loss of value of the residue was against the manifest weight of the evidence.

{¶ 50} Judgments supported by competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 81, 10 OBR 408, 461 N.E.2d 1273. If the evidence is susceptible to more than one interpretation, we must construe it consistently with the judgment of the trial court. *Cent. Motors Corp. v. Pepper Pike* (1995), 73 Ohio St.3d 581, 584, 653 N.E.2d 639. "A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal Co.* at 81.

{¶ 51} Pewamo's manifest-weight argument is predicated on disregarding Dublin's evidence and finding Pewamo's theory of the case and witnesses to be more credible. This is not the correct standard of review for a manifest-weight argument.

{¶ 52} The fifth assignment of error is not well taken and is overruled.

{¶ 53} Having overruled Pewamo's five assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

BROWN and SADLER, JJ., concur.